# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ELAINE L. CHAO,** | ) |
| **Secretary of Labor,** | ) |
| **United States Department of Labor,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No.:  **2:02-CV-1174-VEH** |
| | ) |
| **TYSON FOODS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Before the court is the Motion to Exclude the Reports and Testimony of Defendant's expert witnesses Harold S. Javitz and Jeffrey Fernandez, filed by the plaintiff, Elaine L. Chao, Secretary of Labor, United States Department of Labor (hereinafter "Plaintiff").  (doc. 107).  For the reasons set forth herein, the motion is due to be **DENIED**.

### I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff commenced this action by filing her Complaint on May 9, 2002. (doc. 1).  In her Complaint, Plaintiff alleges that Tyson Foods, Inc., (hereinafter "Defendant") violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (hereinafter "FLSA"), by failing to compensate its employees for the

time they spend donning their outer clothing and gear and sanitizing at the beginning of their shifts, and doffing their outer clothing and gear and sanitizing at the end of their shifts.[1] (docs. 1, 106 at 1). Plaintiff also alleges that Defendant failed to compensate its employees for certain rest breaks as required by the FLSA. (Id.).

Defendant filed its Answer, which included affirmative defenses, on July 9, 2002. (doc. 5). Among its affirmative defenses, Defendant alleges that the uncompensated activities do not constitute compensable "work" under the FLSA. (Id., ¶ 8). Alternatively, Defendant asserts that, even if the activities constitute "work" under the FLSA, they are not compensable under the *de minimis* doctrine. (Id., ¶ 9).

In support of these defenses, Defendant offers the expert reports of Dr. Harold S. Javitz and Dr. Jeffrey E. Fernandez. (doc. 107, exhs. 4, 5). To determine how much time Defendant's employees spend performing the uncompensated activities, Dr. Javitz designed a time study, which was later used by Dr. Fernandez in analyzing videotapes of Defendant's employees actually engaged in the uncompensated activities. (Id.).

On February 21, 2007, Plaintiff filed her Motion to Exclude the Reports and

---

[1] In the remainder of this opinion, these activities will be referred to collectively as "the uncompensated activities."

Testimony of Dr. Javitz and Dr. Fernandez under FED. R. EVID. 702.

## II.   ANALYSIS

"[T]he Rules of Evidence - especially Rule 702 - [ ] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993). In support of her motion to exclude the opinions of Dr. Javitz and Dr. Fernandez, Plaintiff asserts that the opinions are neither relevant nor reliable.

### 1.   Relevance

Plaintiff argues that the reports and testimony of Dr. Javitz and Dr. Fernandez should be excluded because they are not relevant to the central issue in this case – namely, the amount of actual, uncompensated time spent by Defendant's employees, beginning with their first principal work activity of their shifts to their last. Plaintiff asserts that the reports of Dr. Javitz and Dr. Fernandez, which focus on certain "discreet activities" specified to them by Defendant's counsel, are irrelevant to this issue, because they fail to consider the <u>full</u> amount of time Defendant's employees actually spend on uncompensated activities during their continuous work day.

Defendant argues that the study gathered estimates of how much time employees engaged in each uncompensated activity <u>per shift</u>. Hence, while the <u>total</u>

amount of time spent on <u>all</u> uncompensated activities per shift is not expressly detailed in the report, the totals for each activity can be added together to yield a sum total for a continuous workday.

Even if Dr. Fernandez's measurements could not be aggregated to measure the total amount of uncompensated time, Defendant has demonstrated that the opinions are relevant to the present action. The court agrees with Defendant that Plaintiff applies Rule 702 too narrowly, and that the reports of Dr. Javitz and Dr. Fernandez are not inadmissible simply because they do not expressly speak to the central question in the case. As long as the reports are relevant to *any* issue in the case, Defendant asserts, they are admissible. The court agrees. Proffered expert testimony is relevant under Rule 702 if it "logically advances a material aspect of the proposing party's case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999), citing *Daubert*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand).

Defendant explains that Dr. Javitz's and Dr. Fernandez's analyses are relevant to its argument that the uncompensated activities are not "work" under the FLSA, and require only a *de minimis* amount of time, and are therefore not compensable.

As to Defendant's "work" argument, Defendant asserts that the reports of Dr. Javitz and Dr. Fernandez operate together to estimate the amount of time "reasonably

spent" on the uncompensated activities, to aid the trier of fact in determining whether the activities constitute "work."

> In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), [the Supreme Court] [ ] described "work or employment" as "<u>physical or mental exertion</u> (whether burdensome or not) <u>controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business</u>." *Id.*, at 598, 64 S.Ct. 698; see *id.*, at 598, n. 11, 64 S.Ct. 698. The same year, in *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), we clarified that "exertion" was not in fact necessary for an activity to constitute "work" under the FLSA. We pointed out that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Id.*, at 133, 65 S.Ct. 165.

*IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 519, 163 L.Ed.2d 288 (2005) (emphasis added).

According to Defendant, to answer whether the uncompensated activities qualify as "exertion," consideration must be given to the length of time required to complete the activity. See *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994) (concluding that donning and doffing safety glasses, ear plugs, hard hat, and safety shoes is not "work" because they "take[] all of a few seconds" to complete; hence, "although essential to the job, and required by the employer, any time spent on these items is not work"). See also *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556, 561 (E.D.Tex. 2001) ("Due to the fact that the donning and doffing of [protective

outerwear] takes seconds to accomplish and requires very little concentration, the Court finds that the donning and doffing of these items does not involve 'physical or mental exertion,' and, therefore, does not qualify as work within the meaning of the FLSA."), *aff'd*, 44 Fed. Appx. 652 (5th Cir. 2002).

Defendant, however, cites to no <u>binding</u> authority in support of its argument that the time required to complete these activities is relevant to whether the activities constitute "work" under the FLSA.  Plaintiff, meanwhile, cites to two district court opinions[2] within the Eleventh Circuit that reach the opposite conclusion as the Fifth and Tenth Circuits, i.e., that the time spent performing certain activities is irrelevant to whether those activities qualify as "work."  See *Fox. v. Tyson Foods, Inc.*, 2003 WL 32987224 at * 9 (N.D.Ala. 2002) (rejecting the reasoning of *Reich* and observing that "the Supreme Court has clearly expressed its intention that the burdensomeness of the activity be disregarded in an assessment of whether the activity is 'work.'  The Supreme Court instead looks to whether the activity is 'controlled or required' by the employer, and whether it is 'primarily for the benefit of the employer.'"), quoting *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 693, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir. 1972)).  See also *Davis v. Charoen Pokphand*

---

[2] The court notes that district court cases are also not binding upon this court.

*(USA), Inc.*, 302 F.Supp.2d 1314, 1322 n. 8 (M.D.Ala. 2004) ("even an activity which 'takes seconds' and 'requires very little concentration,' *Anderson* [*v. Pilgrim's Pride Corp.*, 147 F.Supp.2d [556,] 560, [(E.D.Tex. 2001)], can be work if it is 'pursued necessarily and primarily for the benefit of the employer.'"), quoting *Muscoda*, 321 U.S. at 598, 64 S.Ct. at 698.").

With no binding authority on whether the amount of time required to complete an activity is relevant to whether such activity constitutes "work," the court is persuaded by the reasoning of *Davis* and *Fox* rather than *Reich* or *Anderson v. Pilgrim's Pride*, and finds that Dr. Fernandez's estimates of the time spent on the uncompensated activities are not relevant to whether such activities are "work."

Nevertheless, the court is persuaded that Dr. Javitz's and Dr. Fernandez's opinions are relevant to whether the time spent performing the uncompensated activities is *de minimis*, and therefore not compensable under the FLSA.

Dr. Fernandez's estimates at first appear irrelevant to a "proper *de minimis*" analysis, because his study concentrates on whether <u>each individual activity</u> requires an amount of time that is *de minimis*, rather than the total amount of uncompensated time throughout the "continuous workday." *See Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 719 (2nd Cir. 2001); *Brock v. City of Cincinnati*, 236 F.3d 793, 804-05 (6th Cir. 2001); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34

(10th Cir. 1998); *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998); *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).[3] See also *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976).[4] However, the court sees no reason why the individual time measurements cannot be considered in the aggregate for purposes of Defendant's *de minimis* defense.

The court is satisfied that Defendant has met its burden of establishing the relevance of Dr. Javitz's and Dr. Fernandez's reports and testimony. Therefore, the motion to exclude on this basis is due to be **DENIED.**

**2.     Reliability**

Plaintiff also avers that Dr. Javitz's and Dr. Fernandez's reports and testimony should be excluded under FED. R. EVID. 702 because they are unreliable.

---

[3] In *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984), the Ninth Circuit enumerated the following factors as relevant to determining whether activities are *de minimis*: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work. *Koskow*, *Brock*, *Reich*, and *Bobo* each cite to *Lindow* in adopting this three-part test.

[4] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

In *Dunlop*, the former Fifth Circuit remanded the action to the district court "for further determination whether <u>all these activities combined</u> still resulted in so slight an expenditure of the employees' time as to be *de minimis* and therefore not compensable." 527 F.2d at 401 (emphasis added).

> [W]e engage in a three part inquiry to determine the admissibility of expert testimony under Fed.R.Evid. 702. Specifically, we must consider whether: (1) [T]he expert is <u>qualified</u> to testify competently regarding the matters he intends to address; (2) the <u>methodology</u> by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony <u>assists the trier of fact</u>, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003), citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998), citing in turn *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2794 (emphasis added). See also *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.2001) (same).

The qualifications of Dr. Javitz and Dr. Fernandez are not in dispute. Dr. Javitz is employed as a Senior Statistician and Principal Scientist by SRI International, an independent, non-profit research institute that conducts client-sponsored research and development for government agencies and private businesses. (See www.sri.com). Dr. Javitz's "specialized professional competence" are, *inter alia*, in the areas of educational statistics, environmental statistics, and litigation consulting. (Javitz Report at Appx. E).

Dr. Fernandez's expertise focuses on industrial engineering. (Fernandez Report at 1). He is employed by J.F. Associates, Inc., an engineering consulting firm, as one of its two principal consultants. (Id.).

9

Plaintiff argues that the reports of Dr. Javitz and Dr. Fernandez should be excluded because they are based on an unreliable methodology.[5]

In preparing his report, Dr. Javitz toured Defendant's Blountsville plant and recommended locations for video cameras to be placed for Dr. Fernandez to use in calculating the amount of time Defendant's employees spent performing the uncompensated activities. (Javitz Report at 1). 184 videotapes were collected from various locations within the plant. (Id.).

Dr. Javitz then designed a method for selecting a representative sample from those videotapes. (Id.). Using Dr. Javitz's sampling plan, Dr. Fernandez viewed

---

[5] Plaintiff cites to several cases for the proposition that statistical expert testimony may be excluded where the methodology employed was so flawed as to render the results confusing, unreliable, or irrelevant. See *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 566-67 (11th Cir. 1999); *U.S. v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997); and *Culley v. Trak Microwave Corp.*, 117 F.Supp.2d 1317, 1320 (M.D.Fla. 2000).

Each of these cases is inapposite to the present action. In *City of Tuscaloosa*, the Eleventh Circuit found that exclusion of a portion of an expert statistician's testimony was proper where it included data that was wholly irrelevant to the facts before the court. 158 F.3d at 566-67. Here, as explained *supra*, the data gathered by Dr. Fernandez is relevant to the facts before the court, particularly to the issue whether the amount of time spent on the uncompensated activities is *de minimis*. Similarly, in *City of Miami*, the court excluded expert testimony that failed to "examine legally relevant factors and was derived from erroneous and incomplete data." 115 F.3d at 873. Plaintiff here has not demonstrated that the reports of either Dr. Javitz or Dr. Fernandez are based on legally irrelevant, erroneous, or incomplete information. Finally, in *Culley*, the court excluded the testimony of an expert statistician whose report was based on an assumption that was contradicted by facts in the record. 117 F.Supp.2d at 1320. Plaintiff here does not appear to argue, and the court finds no basis to conclude, that either Dr. Javitz or Dr. Fernandez formed their opinions on the basis of an incorrect assumption.

certain videotapes, then estimated the amount of time the employees spent engaged in the uncompensated activities. (Fernandez Report at 1, 2).

Plaintiff explains that the experts "corrupted their study by altering their focus," by abandoning their original plan to view all 184 videotapes, in favor of a simpler process, by which Dr. Fernandez ultimately viewed only four tapes that recorded "substantial donning and doffing and washing." In so doing, according to Plaintiff, the experts failed to analyze <u>all</u> their collected data, thereby undermining the study's "statistical validity."[6]

Defendant responds that Dr. Fernandez never intended to view all 184 videotapes gathered for his study. Rather, the entire purpose of Dr. Javitz's report was to design a valid <u>sampling method</u> for Dr. Fernandez to use in forming his conclusions. Dr. Javitz's sampling plan was apparently modified to exclude large

---

[6] To support this argument, Plaintiff offers the opinion of her own expert, Dr. Bruce Barrett, associate professor of statistics at the University of Alabama, who purports to measure the time spent by Defendant's employees performing the uncompensated activities. (See doc. 109, exh. 6 at 2).

For the same reasons espoused by Plaintiff, Dr. Barrett disagrees with Dr. Javitz's and Dr. Fernandez's methodology. The court, however, sees no reason to conclude that Dr. Barrett is more qualified to identify the proper methodology than Dr. Fernandez or Dr. Javitz. Furthermore, two experts may disagree with each other and still be allowed to testify if <u>both</u> utilize valid methodologies. See *McCreless v. Global Upholstery Co., Inc., et al.*, 2007 WL 2350556 at * 3 n. 2 (N.D.Ala. July 13, 2007).

spans of time during which no, or very little, of the uncompensated activities were occurring. (Javitz Dep. at 17). Dr. Javitz explained that

> [t]he sample that was obtained included <u>observations from all videotapes</u>, almost all videotapes were selected from both days in Further Processing and Deboning, the days that were selected for more intense viewing in Evisceration were randomly selected from the days available, the times that were viewed in each processing department were determined by screening selected tapes to determine intervals of substantial activity and adding 2 minutes to the front and back of each such interval as a safety factor and tapes where the times of substantial activity might vary from those on the processing floor were processed in their entirety. <u>None of the changes that were made to the sampling method would have biased the results to be higher or lower than those that would have been obtained using the original sampling plan</u>.

(Javitz Report at 6) (emphasis added).

Having considered the issues raised by Plaintiff and Defendant's arguments in support of its experts' opinions, the court is persuaded that Dr. Javitz's and Dr. Fernandez's reports and testimony are based on proper methodology.[7]

---

[7] Plaintiff has raised various additional arguments in support of her motion to exclude Dr. Fernandez's and Dr. Javitz's opinions, which the court addresses individually as follows:

Plaintiff first avers that Dr. Fernandez failed to measure the actual walking times of Defendant's employees, and later grafted "standard walking times" onto the videotapes three years after the taping was completed. Defendant explains that it did not instruct Dr. Fernandez to measure employees' walking times during his study. In 2005, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) was decided, in which the court instructed that poultry processing employees must be compensated for time spent between their first principal work activity and their last, including time spent walking from the location where employees don and doff protective gear to their work locations. Defendant then requested Dr. Fernandez to supplement his study by including measurements of walking distances, which were obtained by an unnamed industrial engineer employed by Defendant, who followed Dr. Fernandez's oral instructions. (Fernandez Report at 8). Each distance was measured twice to ensure its accuracy. (Id.). If the
(continued...)

## III.   CONCLUSION

As explained *supra*, the court is satisfied that Defendant has demonstrated the relevance of Dr. Javitz's and Dr. Fernandez's reports and testimony to this action. Defendant has also established that Dr. Javitz's and Dr. Fernandez's opinions are founded on proper methodology. Therefore, the motion to exclude the reports and testimony under FED. R. EVID. 702 is due to be **DENIED**. A separate Order will be entered.

---

[7](...continued)
two measurements differed from each other by more than 10%, subsequent measurements were taken. (Id.). The measurements were then aggregated to determine the amount of time spent walking by employees in each department. (Id.). The court finds no basis to conclude that this grafting procedure undermined the reliability of the study in any way.

Plaintiff next argues that Dr. Fernandez improperly excluded certain uncompensated activities performed by Defendant's employees. Defendant responds that Dr. Fernandez counted only one don and doff per shift because its employees are not required to remove their outer clothing to enter the cafeteria, and not all employees remove this clothing during their meal periods. (Id. at 7). According to Defendant, Dr. Fernandez did not measure time spent donning and doffing hairnets and boots, because, until 2003 – after the videotaping was complete – employees were allowed to wear their hairnets home. (Id. n. 4). Because employees must now don and doff hairnets at Defendant's facility, times spent donning and doffing hairnets may supplement Dr. Fernandez's original time measurements by "add[ing] the median value of one don and one doff of the hairnet." (Id.). The court finds no reason that this solution renders the study unreliable.

Plaintiff finally argues that Dr. Fernandez failed to consider the wet conditions in which Defendant's employees walk when he estimated walking times. However, Dr. Fernandez claims that he did consider the conditions, including heat and wetness, in which Defendant's employees walked when he estimated walking times. (Fernandez Dep. at 113).

**DONE** this the 7th day of September, 2007.

                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge