FILED
2007 Sep-07 PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **ELAINE L. CHAO,** ) | |
| **Secretary of Labor,** ) | |
| **United States Department of Labor,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 2:02-CV-1174-VEH** |
| ) | |
| **TYSON FOODS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## **MEMORANDUM OPINION**

Before the court is the Motion to Exclude the Reports and Testimony of Robert G. Radwin and Bruce A. Barrett, filed by the Defendant, Tyson Foods, Inc. (hereinafter "Defendant"). (doc. 109). For the reasons set forth herein, the motion is due to be **DENIED**.

### I.  FACTUAL AND PROCEDURAL HISTORY

Elaine L. Chao, Secretary of Labor, United States Department of Labor (hereinafter "Plaintiff"), commenced this action by filing her Complaint on May 9, 2002. (doc. 1). Plaintiff alleges that Defendant violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (hereinafter "FLSA"), by failing to compensate its employees for time spent donning clothing and gear and sanitizing at

the beginning of their shifts, and doffing such clothing and gear and sanitizing at the end of their shifts.[1] (docs. 1, 106 at 1). Plaintiff also alleges that Defendant failed to compensate its employees for certain rest breaks as required by the FLSA. (Id.).

On February 21, 2007, Defendant filed its motion to exclude Dr. Radwin's and Dr. Barrett's reports and testimony pursuant to FED. R. EVID. 702. (doc. 109).

## II.    ANALYSIS

FED. R. EVID. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 compels this court to perform the critical "gatekeeping" function concerning the admissibility of expert scientific evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). However, the same criteria that are used to assess the reliability of a scientific opinion may also be used to evaluate non-scientific testimony. *Id.*, 387 F.3d at 1262, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999).

---

[1] All acts or omissions complained of in this action allegedly occurred at Defendant's facility in Blountsville, Alabama. (doc. 1).

The Eleventh Circuit set forth the following analysis for admissibility of expert testimony in *Frazier*:

> [I]n determining the admissibility of expert testimony under Rule 702, we engage in a rigorous three-part inquiry.  Trial courts must consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated [by the Supreme Court] in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260.

The court's function under Rule 702 "is to make certain that the expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*  "The district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" *Id.*, quoting *Daubert*, 509 U.S. at 595, 113 S.Ct. at 2798.

As the proponent of Dr. Radwin's and Dr. Barrett's testimony, Plaintiff bears the burden of establishing their admissibility.  *Id.*

The qualifications of Dr. Radwin and Dr. Barrett are not in dispute.[2]  Similarly,

---

[2] Dr. Radwin is a professor of Industrial Engineering and Biomedical Engineering at the University of Wisconsin-Madison, where he conducts research and teaches undergraduate and

no dispute arises as to whether either opinion would assist the trier of fact.

In support of its motion to exclude their opinions, Defendant argues that the methodology employed by Dr. Radwin is statistically unsound.[3]  Consequently, Defendant avers, neither opinion may be relied upon to resolve the factual issues in this case.

To evaluate the reliability of Dr. Radwin's and Dr. Barrett's proffered opinions, the court must evaluate the methods, procedures, and reasoning used in reaching their ultimate conclusions.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999); *McCreless v. Global Upholstery Co., Inc., et al.*, 2007 WL 2350556 at * 3 (N.D.Ala. July 13, 2007).

Dr. Radwin's study began with videotaping Defendant's employees at its

---

graduate students in ergonomics and human factors at the university's College of Engineering. (Radwin Report at 2).  His research and teaching focuses on "measurement and analytical methods for assessing physical activities in the workplace." (Id.).  Dr. Radwin has researched and developed computer software and equipment for work measurement and time studies. (Id.). He has previously performed studies in pork processing, beef processing, and chicken processing plants concerning employees' donning, doffing, and cleaning of personal protective equipment. (Id.).

Dr. Barrett is an associate professor of statistics at the University of Alabama, where he conducts research and teaches graduate and undergraduate courses in statistics.  (Barrett Report at 2).

[3]  Defendant offers no independent basis for the court to exclude Dr. Barrett's report and testimony, other than the lack of reliability of Dr. Radwin's study.  Defendant appears to argue that, because Dr. Barrett's purpose in the study was to determine whether Dr. Radwin's analysis is statistically sound, Dr. Barrett's report and testimony must also be excluded if the court finds that Dr. Radwin's opinion is unreliable.

Blountsville facility.[4]  (Radwin Report at 4).  Using the videotaped footage, Dr. Radwin measured the time spent by certain employees donning and doffing their protective outer wear, both at the beginning and end of their work shifts and at the beginning and end of their meal periods.  (Id. at 5).  Dr. Radwin next estimated employees' walking times between the plant floor and equipment sanitizing areas, hallways, and locker rooms.  (Id. at 6).  Finally, Dr. Radwin compared the times between (1) employees' punching in and out and (2) the times employees actually spent performing their first and last principal work activities.  (Id. at 9-12).  Dr. Barrett then examined Dr. Radwin's selected samples of time measurements to determine whether the samples were consistent with true random sampling.  (Barrett Report at 2).  Dr. Barrett concluded that Dr. Radwin's samples were "highly consistent" with true random sampling.  (Id. at 13).

Statistical testimony may be excluded where the methodology employed is so flawed that the resulting statistics are unreliable.  *See, e.g., City of Tuscaloosa Harcros Chemicals, Inc.*, 158 F.3d 548, 566-67 (11th Cir. 1999) (excluding statistical expert testimony based on commingling of relevant and irrelevant data); *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997) (excluding expert

---

[4] The videotaping relevant to this motion occurred over a three-day period during November 2003.  (Radwin Report at 5).

testimony based on "erroneous and incomplete data"); *Culley v. Trak Microwave Corp.*, 117 F.Supp.2d 1317, 1320 (M.D.Fla. 2000) (excluding expert testimony based on assumption not supported in the record).

The court finds no methodological flaws in Dr. Radwin's study. While Dr. Radwin's study is not based on true, random sampling, which Defendant asserts is the "bedrock" of statistical sampling, Plaintiff points out that the entire purpose of Dr. Barrett's opinion was to determine whether Dr. Radwin's sampling methodology was <u>consistent</u> with that which would be expected if true, random samples had been drawn. As explained *supra*, Dr. Barrett found that Dr. Radwin's methodology was "highly consistent" with a methodology based on true, random sampling.[5] (Barrett Report at 13). While Defendant offers in rebuttal the opinions of its own expert witnesses, who disagree with Dr. Barrett's conclusion, the court is not persuaded by these opinions that Dr. Radwin's methodology is unreliable. Furthermore, two experts may disagree with each other and still be allowed to testify if <u>both</u> use valid methodologies. *See Mcreless*, 2007 WL 2350556 at * 3 n. 2. Plaintiff has demonstrated that Dr. Radwin's study is consistent with a study based on true,

---

[5] Dr. Barrett explains in his report that it was not possible to select a true, random sample of the target population in Dr. Radwin's study, as such would require calculations of times generated over "the several-year target period." (Barrett Report at 3). Therefore, Dr. Radwin focused on the "available population," or the set of donning and doffing activities that occurred during the shifts in which Dr. Radwin conducted his study. (Id.).

random sampling. Defendant's only argument in reply – that Dr. Radwin's failure to use true, random sampling necessarily renders his entire study inadmissible – fails to respond to this explanation.

Finally, the court notes that Dr. Radwin included measurements of certain employees engaged in more than one activity. Dr. Radwin's sampling thus appears to lack independence due to his failure to account for correlations between these observation times, which could render his confidence intervals incorrect and therefore compromise the overall reliability of his study.

Plaintiff, however, has demonstrated that, even if Dr. Radwin accounted for the correlations between observation times, the results of his study would be only slightly different. Specifically, had the correlations been accounted for, Dr. Radwin's upper confidence interval would be adjusted from 15.2307 to 15.3006, and his lower confidence interval from 13.5613 to 13.4914. (Pl's Opp. Br. at 15 n. 8). As Plaintiff points out, these differences are "minuscule," thus rendering insignificant any failure to account for the correlations. Defendant offers no argument or evidence to rebut this explanation.

The court is satisfied that Plaintiff has met her burden of demonstrating that Dr. Radwin's and Dr. Barrett's opinions are based on sound methodology. Therefore, the motion to exclude is due to be **DENIED**. A separate Order will be entered.

**DONE** and **ORDERED** this the 7th day of September, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge