FILED

2008 Jan-22  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **ELAINE L. CHAO,** | ) | |
| **Secretary of Labor,** | ) | |
| **United States Department of Labor,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Case No.:  2:02-CV-1174-VEH** |
|  | ) | |
| **TYSON FOODS, INC.,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are

(1)    the Motion of the Defendant, Tyson Foods, Inc. (hereinafter "Defendant"), for Partial Summary Judgment (doc. 149);

(2)    the Motion of the Plaintiff, Elaine Chao, Secretary of Labor, United States Department of Labor (hereinafter "Plaintiff") (doc. 151);

(3)    the Motion of Defendant to Strike the Declarations of Plaintiff's Witnesses, Mary Ziegler and Michael Murray (doc. 184); and

(4)    the Motions of Plaintiff to Strike various evidentiary submissions of Defendant, incorporated into her submissions in support of her Motion for Partial Summary Judgment.

For the reasons explained herein, the motions are due to be **DENIED**, in part, and **GRANTED**, in part.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff brings this action, asserting that Defendant has violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., for failing to compensate its employees for hours worked in excess of 40 per week.  (doc. 1, Part VI).  Specifically, Plaintiff seeks overtime compensation for Defendant's employees at its Blountsville, Alabama plant for time spent donning, doffing, and washing their protective outer clothing at the beginning and end of each work shift, and for certain rest breaks scheduled during each eight-hour shift.  (doc. 1, ¶ 2(A)).  Further, Plaintiff seeks an injunction requiring Defendant to compensate its employees at <u>all</u> of its plants nationwide for their time spent donning, doffing, and washing and for their second, uncompensated daily "meal break."  (doc. 1, ¶ 2(B)).

Plaintiff initiated this action by filing her Complaint on May 9, 2002.  (doc. 1).  After various pleadings were filed and discovery conducted, Defendant filed its pending Motion for Partial Summary Judgment on July 23, 2007.  (doc. 149).  Plaintiff filed her pending Motion for Partial Summary Judgment, including various motions to strike, also on July 23, 2007.  (doc. 151).  Defendant filed its Motion to Strike on August 24, 2007.  (doc. 184).

## II.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2553. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.

3

*Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th

Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S.Ct. at

2510; *Chapman*, 229 F.3d at 1023.  If the evidence presented by the nonmoving party

to rebut the moving party's evidence is merely colorable, or is not significantly

probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249, 106 S.Ct.

at 2511.

The method used by the party moving for summary judgment to discharge its

initial burden depends on whether that party bears the burden of proof on the issue

at trial.  See *Fitzpatrick*, 2 F.3d at 1115-17, citing *U.S. v. Four Parcels of Real

Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*).  If the moving party bears the

burden of proof at trial, then it can meet its burden on summary judgment only by

presenting positive evidence that demonstrates the absence of a genuine issue of

material fact; i.e., facts that would entitle it to a directed verdict if not controverted

at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing,

the burden shifts to the nonmoving party to produce significant, probative evidence

demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its

initial burden on summary judgment in either of two ways.  First, the moving party

may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996), citing *Lujan v.*

5

*Defenders of Wildlife*, 504 U.S. 555, 561 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351(1992).[1]

## III.   ANALYSIS

### A.   Defendant's Motion for Partial Summary Judgment

Defendant seeks summary judgment as to (1) Plaintiff's claim that a second, 30-minute rest break during an eight-hour shift is compensable in its entirety, and (2) Plaintiff's claim that Defendant's employees should be compensated for pre- and post-shift donning, doffing, and washing.

### 1.   Second Meal Period Claim[2]

---

[1]

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

*See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[2]

In the Complaint, Plaintiff seeks overtime compensation for the second of two daily "meal periods" for Defendant's Blountsville plant employees and a nationwide injunction requiring Defendant to pay its employees for the second "meal period" at <u>all</u> of its facilities. (doc. 1, ¶¶ 2(A), (B)). Defendant's Motion for Partial Summary Judgment applies to Plaintiff's meal period claim related to <u>all</u> of its plants. (See doc. 155, pg. 12, Statement of Facts ## 1-4, 6; doc. 204, pg. 1). However, Plaintiff mistakenly argues that the motion applies only to her meal period claims at Defendant's Blountsville plant (see doc. 167, pg. 1); thus, she has failed to oppose Defendant's motion on her

Defendant argues that it is entitled to summary judgment as to Plaintiff's second meal period claim, because the meal period constitutes a "bona fide meal period," and is therefore not compensable under 29 C.F.R. § 785.19.

29 C.F.R. § 785.19 provides, in relevant part, that

(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

The standard for determining whether a meal period is a "bona fide meal period" in the Eleventh Circuit is set forth in *Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1477 (11th Cir. 1990). To satisfy this standard, the employer must establish that an employee is "completely relieved from duty."[3] To be completely

---

meal period injunctive relief claim relating to any facility other than Blountsville. Therefore, Defendant's Motion for Partial Summary Judgment is due to be **GRANTED** as unopposed as to Plaintiff's meal period claims relating to plants other than the Blountsville facility. Additionally, based on the unrefuted evidence provided by Defendant regarding meal periods at all of its plants, the court finds that its analysis granting summary judgment as to the meal periods at Defendant's Blountsville plant applies equally to Defendant's other facilities.

[3]

In *Kohlheim*, the Eleventh Circuit adopted the completely relieved from duty test in the context of firefighters' claims for compensation for time spent on call and at their work stations during their meal periods. 915 F.2d at 1477. The court acknowledged that, because the firefighters were "tour of duty employees" under 29 U.S.C. § 207(k), they were subject to the "special provisions"

relieved from duty, employees cannot be subject to "significant affirmative responsibilities" during the meal period.   915 F.2d at 1477.   The "essential consideration" is whether the employees "are in fact relieved from work for the purpose of eating a regularly scheduled meal."   *Id.*

The court instructed in *Kohlheim* that "what matters in meal period cases is whether the employees are subject to <u>real limitations</u> on their personal freedom which inure to the benefit of their employer."   915 F.2d at 1477 n. 19, citing *Wahl v. City of Wichita*, 725 F.Supp. 1133, 1138-44 (D.Kan. 1989) (emphasis added).[4]

---

applicable to public firefighters under 29 C.F.R. § 553.221(a).  915 F.2d at 1477.  However, the court also explained that, to satisfy 29 C.F.R. § 553.221(a), the "completely relieved from duty" standard in § 785.19 must first be met.  *Id.*  Therefore, while *Kohlheim*, on its face, applies to firefighters under § 553.221(a), the court is confident that the Eleventh Circuit would also apply the analysis therein to claims asserted under § 785.19.

[4]

Both Plaintiff and Defendant aver that the predominant benefit test applies to § 785.19 meal period claims, rather than the completely relieved from duty standard.  As explained *infra*, these arguments are incorrect.

In *Kohlheim*, the Eleventh Circuit cited to *Wahl* and three circuit court cases in support of its conclusion that the "completely relieved from duty" standard should be applied to § 785.19 meal period claims.  *Kohlheim*, 915 F.2d at 1477 n. 20, citing *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1115 n. 1 (4th Cir.1985); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir.1975); *Brennan v. Elmer's Disposal Ser., Inc.*, 510 F.2d 84, 88 (9th Cir.1975).

Despite this supporting authority, the Eleventh Circuit now appears to be an anomaly among the Circuits in its application of the completely relieved from duty standard to § 785.19 claims.  Since deciding *Kohlheim*, all but one of the above-cited cases have been called into doubt by the relevant Circuit Courts (in *Armitage v. City of Emporia, Kan.*, 982 F.2d 430, 431 (10th Cir. 1992), the Tenth Circuit expressed disapproval of the standard as applied in *Wahl*; in *Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 545 n. 5 (4th Cir. 1998), the Fourth Circuit rejected any reading of *Donovan* as adopting the standard; and in *Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531, 534 (8th Cir. 1993), the Eighth Circuit rejected any reading of *Mumbower* as adopting the standard.  In

_Armitage_, _Roy_, and _Henson_, the Circuit Courts each adopted the predominant benefit test as applicable to meal period claims under § 785.19(a). _See Armitage_, 982 F.2d at 431; _Henson_, 6 F.3d at 534; _Roy_, 141 F.3d at 545).

Meanwhile, the Seventh Circuit has interpreted the completely relieved from duty standard as analogous to, or requiring application of, the predominant benefit test. _See Leahy v. City of Chicago, Ill._, 96 F.3d 228, 230 n. 2 (7th Cir. 1996).

Thus, only _Brennan_ appears to continue to stand among the cases cited by the Eleventh Circuit in support of its application of the "completely relieved from duty" standard in _Kohlheim_. Nevertheless, the completely relieved from duty standard applies to § 785.19 claims <u>in this circuit</u>, regardless of how other circuits have interpreted the regulation. Therefore, any argument posited by either party to this action that the Eleventh Circuit applies the predominant benefit test to meal period claims under § 785.19 is inapposite.

However, it is noteworthy that, while the completely relieved from duty standard is applicable to meal period claims brought under <u>§ 785.19</u>, the Eleventh Circuit does apply the predominant benefit test to such claims asserted under 29 C.F.R. § 553.223 <u>by law enforcement officers</u> subject to section 7(k) of the FLSA. _See Avery v. City of Talladega, Ala._, 24 F.3d 1337, 1344-47 (11th Cir. 1994).

Therefore, the Eleventh Circuit applies two different standards to meal period claims, depending on which regulation is cited in support thereof:  the predominant benefit test applies to claims brought by law enforcement officers under § 553.223(b), while the more stringent "completely relieved from duty" standard applies to claims brought by "other types of employees" under § 785.19. _Avery_, 24 F.3d at 1345.

Defendant cites to _Avery_ in support of its argument that the predominant benefit test applies in this context, even in the Eleventh Circuit. However, _Avery_ is distinguishable from this action, while _Kohlheim_ is not. In _Avery_, the Eleventh Circuit noted that _Kohlheim_ addressed the applicability of § 785.19 to meal period claims <u>in general</u>, whereas the question before the court in _Avery_ was the interplay between § 785.19 and § 553.223(b), the regulation applicable to law enforcement officers. Such interplay is not at issue here, nor was it in _Kohlheim_, in which the Eleventh Circuit specifically explained that "we join the other circuits which have adopted the mealtime exclusion standards of § 785.19 as an appropriate statement of the law."  915 F.2d at 1477 n. 20, _citing Donovan_, _Mumbower_, and _Brennan_.

Defendant also cites to _Bridges v. Amoco Polymers, Inc._, 19 F.Supp.2d 1375 (S.D.Ga. 1997) to support its argument that the predominant benefit test applies to this action. However, _Bridges_ is not persuasive authority. The district court in _Bridges_ found that the predominant benefit test was applicable to § 785.19 meal period claims, citing to _Dade County, Fla. v. Alvarez_, 124 F.3d 1380 (11th Cir. 1997), not _Kohlheim_, in support thereof. The _Bridges_ court explained that _Kohlheim_ was distinguishable because _Kohlheim_ addressed the meal period claims of firefighters, whereas _Bridges_

Applying the completely relieved from duty standard as set forth in *Kohlheim*, the court must examine whether the second rest break is allotted "for the purpose of eating a regularly scheduled meal," whether Defendant's employees retain "significant affirmative responsibilities" during the meal period, and whether the employees are subject to "real limitations on their freedom" during the break which inure to Defendant's benefit.  *See Kohlheim*, 915 F.2d at 1477.

---

addressed the meal period claims of polymer plant workers.  19 F.Supp.2d at 1379.  However, *Dade County*, which considers the compensability of law enforcement officers' off-duty training time, does not address the compensability of meal periods under § 785.19, or any other provision, and is therefore even further distinguishable from *Bridges* than is *Kohlheim*.  124 F.3d at 1384.

Because all but one of the cases cited by the Eleventh Circuit in *Kohlheim* in support of its application of the completely relieved from duty standard has, since *Kohlheim* was decided, been rejected by the relevant circuit courts, this court would be unsurprised if the Eleventh Circuit is also persuaded to reject the standard in favor of the predominant benefit test.  However, as the completely relieved from duty standard is a more difficult standard for an employer to meet than the predominant benefit test, and as this court has concluded that Defendant satisfies the completely relieved from duty standard in this case, the court necessarily also concludes that the predominant benefit test is satisfied.  Regardless of whether Defendant benefits from the activities at issue, Plaintiff has failed to meet her burden of demonstrating that Defendant receives the predominant benefit thereof.

Further, Defendant has conceded that the donning, doffing, and washing activities that occur during the second rest break are compensable if they are "work" under the FLSA and are not *de minimis*.  As explained hereinafter, the court finds that Defendant can assert its *de minimis* defense, and that such defense – similar to the question whether these activities are "work" – raises genuine issues of material fact under the facts and circumstances of this case.  The court also finds that the unrefuted evidence establishes that the donning, doffing, and washing activities that occur during the challenged 30-minute meal period take less than half of such period and thus, together with the other evidence discussed under the "completely relieved from duty" standard, the employees receive the predominant benefit of the challenged meal periods.

10

Defendant argues that the first element of this test is satisfied, because it provides both breaks for the purpose of eating a regularly scheduled meal.  Plaintiff disputes this argument, pointing out that the two breaks are scheduled only two and a half to three hours apart, and therefore, must be provided for some purpose other than to eat a regularly scheduled meal.[5]

The only authority Plaintiff cites in favor of her position is *Brock v. Claridge Hotel & Casino*, 664 F.Supp. 899, 907-08 (D.N.J. 1986).  Plaintiff apparently relies on *Claridge Hotel* for the proposition that numerous rest breaks during a work shift are unlikely to be offered for the purpose of eating regularly scheduled meals, but are more likely for the <u>employer's</u> benefit.  In *Claridge Hotel*, the district court found that <u>several</u> 20-45-minute breaks throughout an eight-hour shift could not have been scheduled "for the purpose of eating a regularly scheduled meal," because, *inter alia*, the breaks occurred only an hour and a half to two hours apart.[6]  *Id.*  The court

---

[5]

According to Plaintiff, "the requirement that meal breaks be for the purpose of eating regular meals [ ] cannot be met here where the breaks, unlike normal meal periods, are scheduled only two and a half or three hours apart." (doc. 167, pg. 9).  Plaintiff appears to argue that it would be nonsensical, *per se*, to schedule two meals only two and a half to three hours apart.  The court disagrees, particularly in light of the growing consensus that greater health benefits may be derived from eating several small meals throughout the day than by following a three-meals-per-day approach. Furthermore, Plaintiff offers no explanation of how often she believes – and would have the court assume – "normal meal periods" should occur.  Finally, as Defendant points out, at least some of its employees eat during both rest breaks, further supporting its position that an individuals may eat two meals within two and a half to three hours of each other.

[6]

While the court in *Claridge Hotel* did not specify how many hours constituted a single work shift,

explained that "not all of [the] breaks can logically be considered meal periods," because "no one would eat so many meals in a day." *Id.*

*Claridge Hotel* is distinguishable from this action in that, here, only two thirty-minute breaks are in question, rather than several breaks throughout an entire shift. Furthermore, the employees in *Claridge Hotel* were clearly required to take the several breaks for purposes other than eating regularly-scheduled meals. There, the employees' primary duty was to supervise gambling activities on a casino floor, work which the court described as "requir[ing] intense concentration," necessitating "frequent breaks" to maintain the employees' focus. 664 F.Supp. at 907. The court concluded that "[t]he primary purpose of these breaks was to maintain worker productivity" and to "increase the workers' efficiency" while on duty, not to provide "regularly scheduled meals." *Id.*

In contrast to *Claridge Hotel*, the court finds no evidence that a second rest break was necessary to allow Defendant's employees to increase their efficiency on the production floor. Nor does Plaintiff argue that the employees' primary duties required such "intense concentration" as to demand a second rest break.

---

the opinion addresses shifts in terms of eight-hour workdays. 664 F.Supp. at 904. Therefore, with breaks occurring every hour and a half to two hours, it is reasonable to conclude that the employees received at least four rest breaks during an eight-hour shift, or twice as many as those presently at issue.

Finally, Plaintiff avers that Defendant provides the second rest break <u>so that</u> it may perform a wash-down of its production floor and equipment while the employees are away from their workstations.  However, the court notes that USDA regulations do not require a wash-down twice during an eight-hour shift.  That Defendant chooses to perform this task more often than it is required to do by law does not indicate that it offers the second rest break <u>for that purpose</u>.

Finally, Plaintiff argues that, while the first of the two rest breaks constitutes a non-compensable meal period, the second is compensable, because it does not "meet the criteria" for a bona fide meal period.  However, other than their temporal proximity, Plaintiff offers no basis for the court to distinguish the first meal period from the second.

The court finds no basis to conclude that the second rest break is offered for any purpose other than to eat a meal.  Under the circumstances of this case, the court will not conclude, as a matter of law, that a second rest break at least two and a half hours after the first is not for the purpose of eating a regularly scheduled meal.  Defendant has established that the second rest break is provided for the purpose of eating a regularly scheduled meal.  Therefore, the first element of the completely relieved from duty standard is satisfied.

As to whether Defendant's employees retain "significant affirmative

13

responsibilities" during their second rest break, the evidence of record indicates they do not.  The only "affirmative responsibilities" the employees are required to perform during either rest break is to doff their protective outerwear at the beginning of the meal period, wash and sanitize their equipment, then don the equipment again at the end of the break.

The Eleventh Circuit appears to require a higher level of responsibility during a rest break before finding that this element is satisfied.  In *Kohlheim*, the court found that firefighters retained "significant affirmative responsibilities" during their meal periods, because they were expected to remain at their work stations, subject to emergency calls, while they ate their meals.  915 F.2d at 1477.  As the *Bridges* court noted, such duties constitute "the bulk of a fireman's job."  *Bridges*, 19 F.Supp.2d at 1379.

Similar to the court's observation in *Bridges*, however, "a plant worker's job is to *work* at their station."  *Id.* (emphasis in original).  During the second meal period at issue here, the employees are not suffered to work at their stations, or perform any other "significant affirmative responsibilities" which are even remotely analogous to their on-duty tasks.  Moreoever, Plaintiff offers neither argument nor authority for the proposition that donning, doffing, and washing protective outer gear at the beginning and end of a meal period constitutes "significant affirmative responsibilities"

14

compared to the employees' productive work while on duty.  Rather, Plaintiff ignores the completely relieved from duty standard altogether, and offers no analysis of this aspect of her claim.  The court finds that the second element of the completely relieved from duty standard is also satisfied.

As explained *supra*, the Eleventh Circuit has instructed that "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." *Kohlheim*, 915 F.2d at 1477 n. 19.  In *Kohlheim*, the firefighters were subject to the same or similar working conditions during their breaks as during the rest of their shift.  *Id.* at 1477. This constituted a "real limitation" on their personal freedom from which their employer specifically benefitted, in that the employer retained an "available pool of competent firefighters" for "immediate response" in the event of an emergency. *Kohlheim*, 915 F.2d at 1477.

No such limitations are present here.  Plaintiff does not assert that the employees are on call to respond to any emergency during their second rest break, and concedes that they are free to leave the plant to perform personal errands, eat at local restaurants, or go home.  While Plaintiff argues that Defendant's Blountsville plant is too remote for its employees to truly benefit from any surrounding amenities, the Eleventh Circuit has rejected this argument as offering any justification for

rendering a meal period compensable under the FLSA.  *See Avery*, 24 F.3d at 1347 n. 8.

Short of donning, doffing, and washing their protective gear, Defendant's employees are free to spend their meal periods as they wish.  The employees are "completely relieved from duty" as that standard is applied in this circuit, thereby satisfying the requirements of a "bona fide meal period" under § 785.19.  On this basis, Defendant's Motion for Partial Summary Judgment is due to be **GRANTED** as to this claim.[7]

## 2.    Pre- and Post-Shift Donning, Doffing, and Washing Claims[8]

Defendant argues that it is entitled to summary judgment as to Plaintiff's pre- and post-shift donning, doffing, and washing claims because the activities are

---

[7]

In the alternative, Defendant argues that the second rest break is non-compensable "off-duty" time under § 785.16.  However, if the court were to deny summary judgment as to Defendant's § 785.19 argument, the court would also **DENY** summary judgment as to whether the break constitutes "off-duty" time under § 785.16.  The primary focus of this regulation is whether the off-duty time is long enough to enable the employee to use the time effectively for his own purposes.  *See, e.g., Jackson v. Airways Parking Co.*, 297 F.Supp. 1366, 1381 (N.D.Ga. 1969).  That determination involves a material factual dispute as to whether the second unpaid break is, in fact, long enough to satisfy this standard.

[8]

Defendant stipulates that it seeks Summary Judgment as to Plaintiff's pre- and post-shift donning, doffing, and washing claims only as to its Blountsville facility.  (doc. 155, pg. 27 n. 9).  Therefore, any ruling by the court on these claims shall apply only to Defendant's Blountsville facility, and have no effect on Plaintiff's claims as they relate to Defendant's other facilities nationwide.  (As stated *supra*, Plaintiff seeks a nationwide injunction as to both the donning, doffing, and washing and the second "meal break".)

excluded from compensability under the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2).[9] Specifically, Defendant avers that the activities are not compensable as a matter of law, because they are preliminary and postliminary to its employees' principal work activities, and are not otherwise compensable as "integral and indispensable" to any principal activity.

While Plaintiff does not dispute that the pre- and post-shift activities are preliminary and postliminary duties, she argues that they are compensable as integral and indispensable to the employees' principal work activities.

The Supreme Court established the "integral and indispensable" doctrine in *Steiner v. Mitchell*, in which the Court addressed pre- and post-shift donning, doffing, and showering claims by battery plant workers. *Steiner*, 350 U.S. at 248, 76 S.Ct. at 331. The Court concluded that, due to the hazardous conditions in which the employees worked, the donning, doffing, and showering at issue were integral and

---

[9]

29 U.S.C. § 254(a)(2) excludes from compensability

> activities which are preliminary to or postliminary to said principal activity or activities which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

Activities which are "integral and indispensable" to a principal activity are compensable, as an exception to the Portal-to-Portal Act, because they are themselves "principal activities" within the meaning of § 254(a)(2). *See Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37, 126 S.Ct. 514, 525, 163 L.Ed.2d 288 (2005); *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1342 (11th Cir. 2007).

17

indispensable to their ability to perform their principal work activities inside the plant.  350 U.S. 252-53, 76 S.Ct. 333-34.

The former Fifth Circuit applied the "integral and indispensable" doctrine to electricians' claims for their pre-shift duties in *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 399 (5th Cir. 1976).  In *Dunlop*, the plaintiffs sought compensation for filling out paperwork, unloading refuse from their work trucks, and checking their job locations prior to the beginning of their compensable work shift.  527 F.2d at 397. The court instructed that the following factors are relevant to determine whether an activity is integral and indispensable:  (1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his duties; and (3) whether the activity primarily benefits the employer.  527 F.2d at 401.  The court concluded that these factors were satisfied in *Dunlop*, and that the electricians' pre-shift work duties constituted "principal activities" for which they must be compensated.  *Id.*

More recently, the Ninth Circuit applied a similar analysis in a case closely on point with the present action.  *See Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003). The court there concluded that the donning, doffing, and washing of protective outer gear by employees at a meat processing plant were integral and indispensable to employees' principal activity of processing meat.  339 F.3d at 902-03.  The court

18

found specifically that (1) the activities were required by the employer, USDA and OSHA regulations, and by the nature of the work; and (2) the employer benefitted from the activities because they enabled the employer to comply with government regulations and to prevent injury to its employees and contamination of its product. *Alvarez*, 339 F.3d at 903. Finally, <u>because</u> the duties were mandatory, the court found them necessary to the employees' principal work activity. *Id.*

This analysis and this conclusion were not specifically addressed, disturbed, or endorsed by the Supreme Court; however, the Court implicitly relied on the Ninth Circuit's "integral and indispensable" determination in concluding that any walking time that occurs <u>after</u> pre-shift donning and doffing is also compensable. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33, 37, 126 S.Ct. 514, 524, 525, 163 L.Ed.2d 288 (2005). Therefore, while the Ninth Circuit's decision in *Alvarez* is not binding upon this court, *Alvarez* appears to be the most relevant authority in determining whether the pre- and post-shift donning, doffing, and washing activities here are "integral and indispensable" to principal work activities.

Contrary authority, however, also exists as to how *Steiner v. Mitchell* may be applied to determine whether an activity is integral and indispensable. In a post-*Alvarez* decision, the Second Circuit applied the integral and indispensable doctrine to claims asserted by employees at a nuclear power plant, who were required to don

19

and doff protective gear and complete certain security-related procedures prior to beginning their work shifts. *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 589 (2nd Cir. 2007). Contrary to the Ninth Circuit in *Alvarez*, the Second Circuit applied *Steiner v. Mitchell* narrowly, concluding that the integral and indispensable doctrine was intended to apply only in cases where an activity is necessary to protect employees from a <u>lethal</u> environment and thereby <u>enable</u> them to perform their principal work activities. *Gorman*, 488 F.3d at 593.

*Gorman*, however, is less on point with the present action than *Alvarez*, as the Second Circuit there did not address donning and doffing claims in a meat or poultry processing plant, nor did it consider factors similar to *Dunlop*'s three-part analysis. Therefore, while the Second Circuit espouses a narrow application of *Steiner*, binding, former Fifth Circuit precedent persuades the court that the Eleventh Circuit would more likely agree with the position of the Ninth Circuit as expressed in *Alvarez*.[10]

---

[10] This conclusion is further supported by a recent Eleventh Circuit decision that, while not on point with the present case, establishes that this circuit continues to apply a similar standard as the Ninth Circuit in determining whether an activity is "integral and indispensable" to a principal work activity. *See Bonilla*, 487 F.3d 1340. In *Bonilla*, the Eleventh Circuit considered the compensability of time spent by construction workers navigating security procedures and traveling to their work sites. 487 F.2d at 1341-42, 1344. The court applied the three-part analysis in *Dunlop* to determine whether the duties were "integral and indispensable" to the employees' principal work activities, and concluded that they were not, as the pre-shift duties were neither required by the employer, nor did the employer benefit therefrom. 487 F.2d at 1344. It is noteworthy that, while *Bonilla* was decided after the Ninth Circuit decided and was affirmed by the Supreme Court in *Alvarez*, the Eleventh Circuit did not cite

### a.     Required items

In the present case, some of the employees' protective outerwear is required by Defendant, while some is optional.[11]  Applying *Dunlop*'s three-part analysis, the first element is readily satisfied as to the required items at issue.

As to the second element, Defendant concedes that the donning, doffing, and washing of required items is "technically necessary."  Therefore, as to required items, the primary remaining issue is whether Defendant "primarily benefits" from such activities.  This element is addressed *infra*.

### b.     Optional Items

---

to *Alvarez* in *Bonilla*, despite the fact that *Alvarez* contains a similar analysis to that found in *Dunlop* and *Bonilla*.

[11]

For example, all production employees are required to wear a smock, hairnet, beard net (where applicable), and earplugs.  (Def's exh. K, pg. 1).  Additionally, depending on the department in which an employee works, other required items include a safety vest, safety goggles and earplugs, cutting gloves, arm guards, rubber boots, rubber gloves, or latex gloves.  (Id., pp. 1-6).

Since October 1, 2003, evisceration employees at Defendant's Blountsville facility have also been required to wear rubber outer shoes over their street shoes while on the production floor.  (Id., pg. 6).  Employees are allowed to wear rubber boots in lieu of rubber outer shoes, and are permitted to wear either type of shoe outside the plant, including from home.  (Id.).

Since the summer of 2003, Defendant has prohibited its Blountsville employees from wearing hairnets outside the plant.  (Id.).  Therefore, donning and doffing of hairnets must occur inside the facility.

Optional items, based on the department in which an employee works, include rubber gloves, rainsuit, safety goggles, smock, hairnet, apron, plastic sleeves, cotton gloves, and rubber boots.  (Id., pp. 1-6).

Plaintiff avers that even the optional outerwear satisfies the first element of the integral and indispensable analysis, as such gear is required "by the nature of the work," due to the cold, wet, messy, and unsanitary environment inside the plant. Defendant responds that this description of its Blountsville plant is "exaggerated," as the plant is "no more risky to employees than handling raw chicken when preparing a meal at home."[12]   (Def's Reply Br. pg. 17).

_____

12

Defendant argues that the conditions within its Blountsville plant are "normal" and similar to those in which other courts have held that donning, doffing, and washing of protective gear is not integral and indispensable. *See Gorman*, 488 F.3d at 593; *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556 (E.D.Tex. 2001); *Reich v. Oscar Meyer Foods, Corp.*, 1995 WL 1765643 (E.D.Tex. 1995); *Reich v. IBP, Inc.*, 38 F.3d 1123; *McComb v. C.A. Swanson & Sons*, 77 F.Supp. 716 (D.Neb. 1948). However, the court notes that argument of counsel (that the conditions are "normal" and similar to other chicken processing facilities) is not evidence.

Further, none of the cited cases is helpful in deciding whether the conditions at <u>Defendant's Blountsville, Alabama plant</u> causes the donning and doffing of the particular items at issue in this case to be required by the nature of the work.  In *Gorman*, the donning and doffing at issue involved that of "generic" items such as steel-toed boots, hard-hats, and safety glasses within a nuclear power plant, which, unarguably, did not contain raw chicken parts or their companion wet and messy conditions.  488 F.3d at 592.

In *Pilgrim's Pride*, the district court made no specific finding as to the conditions within the poultry processing plant at issue there.  147 F.Supp.2d at 563.

The court in *McComb* similarly made no express finding as to the working conditions involved.  77 F.Supp. 716.  Moreover, *McComb* is a pre-*Steiner* decision, and therefore had no occasion to address whether the "nature of the work" render donning, doffing, and washing of protective clothing integral and indispensable.

Finally, in *Reich v. IBP, Inc.*, the Tenth Circuit stated that the nature of the work <u>and</u> federal and company regulations required <u>meat</u> (not chicken) processing employees to don and doff protective outer clothing, but made no statement regarding the relevant working conditions.  38 F.3d at 1124. Without an explanation of the *Reich* court's finding on this question, this court will not assume that the donning and doffing at issue here is required by the nature of the work simply because the court

In *Bonilla*, the Eleventh Circuit offered no instruction as to whether the "nature of the work" may render a particular duty integral and indispensable.  Rather, the court there focused on whether the <u>employer</u> requires the performance of a duty.  487 F.3d at 1344.  Clearly, Defendant does not require its employees to wear items which are optional.  Therefore, these items fail to satisfy the first element of the integral and indispensable analysis.

As to the second element[13], Defendant argues that many employees choose not

_____

so concluded in *Reich*.

[13] As discussed *supra*, the Ninth Circuit appears to subsume the "necessary" element of this analysis with the "required" element, concluding that, <u>because</u> the employer required its employees to wear certain outer gear, it was also <u>necessary</u> to the performance of the employees' work activities. *Alvarez*, 339 F.3d at 903.

Consistent with *Alvarez*, Plaintiff argues that the "necessary" element is satisfied where an activity is required by the employer.  She cites to 29 C.F.R. § 790.8(c) in support of this argument.

   29 C.F.R. § 790.8(c) provides, in relevant part, that

   If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, [FN65] changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.

Foonote 65 states that "[s]uch a situation may exist where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work."

Plaintiff argues that this regulation is entitled to deference, as the Supreme Court relied on it in *Steiner*.  However, upon a close reading of *Steiner*, it is not clear that the Court actually <u>relied</u> upon § 790.8(c) in reaching its conclusion; on the contrary, the Court merely agreed with the trial court, which had found that the donning, doffing, and showering activities of battery-plant workers were integral and indispensable because they (1) were made necessary by the nature of the work; (2) directly benefitted the employer in the operation of its business; and (3) were "so closely related to

to wear optional items, thereby demonstrating that such items are not necessary to the performance of the employees' work.  Plaintiff offers very little, if any, response to this argument.  Therefore, with no basis to conclude that optional items are necessary, this element is also unsatisfied.

In summary, as to required items, the first two elements of the integral and indispensable analysis are satisfied.  As to optional items, neither element is satisfied.

### c.    Primary benefit

With regard to the third element, Plaintiff avers that Defendant primarily benefits from the donning, doffing, and washing of both required and optional items because the activities enable Defendant to comply with (1) government regulations, and (2) its own standard of sanitation, by preventing the contamination of its product and injury or illness to its employees.

Defendant counters that it does not <u>primarily</u> benefit from these activities,

---

the employees' other duties as to be an integral part thereof." *Steiner*, 350 U.S. at 252, 76 S.Ct. at 333.  In citing <u>generally</u> to 29 C.F.R. § 790.8, the Court explained relevant portions of the legislative history of the FLSA, but did not specifically find or even imply that, where an activity is required by an employer, it is thereby "necessary."  *See* 350 U.S. at 255, 76 S.Ct. at 335.

Therefore, as the Supreme Court has not specifically endorsed Plaintiff's argument, it remains an open question whether the Eleventh Circuit would consider the "necessary" element of the "integral and indispensable" analysis to be established any time an activity is required by an employer. Moreover, because the Eleventh Circuit has specifically enumerated the <u>necessity</u> of activities as a separate element from whether the activities are <u>required</u>, it is not likely that that court would conflate the two elements.  *Dunlop*, 527 F.2d at 401; *Bonilla*, 487 F.3d at 1344.

because they are not part of the "productive work" in which its employees are engaged, i.e., poultry processing.  Rather, Defendant points out that certain items, such as aprons and gloves, are in some cases provided solely for the employees' benefit. (Casey Dep. pg. 162).  According to Defendant, the court may not presume that, simply because it requires the duties at issue, it <u>primarily</u> benefits therefrom.

Plaintiff responds, however, that this element is satisfied, as the relevant standard is not whether Defendant primarily benefits from the performance of a duty, but whether Defendant derives <u>any</u> benefit therefrom.  *See Dunlop*, 527 F.2d at 398 ("[d]ecisions construing the Portal-to-Portal Act in conjunction with the F.L.S.A. make clear that the excepting language of § 4 was intended to exclude from F.L.S.A. coverage only those activities 'predominantly . . . spent in (the employees') own interests'. [ ]  No benefit may inure to the company").  Because Defendant derives <u>some</u> benefit from the activities at issue, Plaintiff argues that this element of the integral and indispensable analysis is satisfied.

Plaintiff misstates the holding in *Dunlop* and its progeny.  In *Dunlop*, the court explained further that "[t]he exemption was not intended to relieve employers from liability for 'any work of consequence performed for an employer' . . . from which the company derives '<u>significant</u> benefit.'"  *Id.* (emphasis added).  Moreover, in *Bonilla*, as explained *supra*, the court held that time spent by construction workers proceeding

25

through a security clearance was not integral and indispensable.  487 F.3d at 1344. The court found that the employer did not <u>primarily</u> benefit from its employees' compliance with the security requirements.  *Id.*  However, it is clear that the employer benefitted at least in part therefrom, because its employees' compliance enabled them to reach their work sites to perform their jobs.  *Id.*  Despite this benefit to the employer, the activities were held <u>not</u> to be "integral or indispensable."  Therefore, the Eleventh Circuit clearly does not apply Plaintiff's proffered standard that <u>any</u> benefit to the employer renders an activity integral and indispensable.

The fact that Defendant may derive <u>some</u> benefit from its employees' use of protective outer gear, and from the washing of these items at the end of the compensable workday, does not necessarily render Defendant the <u>primary</u> beneficiary thereof.  Any benefit that Defendant derived from the cleanliness of its plant – including its employees' protective outer gear – is counterbalanced by the benefit to its employees by ensuring their outerwear is cleansed of raw chicken product, thus reducing the risk of illness to employees and cross-contamination from employees' outerwear to other objects or persons outside the plant, including employees' homes. Therefore, while Defendant does receive a benefit from these activities, a question of material fact remains as to whether the benefit it receives is so significant that it is Defendant, and not Defendant's employees, who receives the <u>primary</u> benefit thereof.

Because this element of the integral and indispensable analysis is not satisfied as to required or optional items, Defendant's Motion for Partial Summary Judgment is due to be **DENIED** as to this claim.

### B.   Plaintiff's Motion for Partial Summary Judgment[14]

In her Motion for Partial Summary Judgment, Plaintiff argues that (1) the donning, doffing, and washing activities at issue are compensable "work" under the FLSA; (2) such activities are compensable despite the Portal-to-Portal Act; (3) Defendant should not be permitted to present a *de minimis* defense against her claims; (4) the second, unpaid rest break is compensable as "work" under the FLSA; (5) Defendant should not be permitted to present a good faith defense against her claims; and (6) if Plaintiff prevails on the merits of her claims, Defendant must be ordered to pay liquidated damages therefor.

### 1.   Whether the activities are compensable "work" under the FLSA.

In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944), the Supreme Court described "work" as

---

[14] In a footnote at the end of her Motion for Partial Summary Judgment, Plaintiff stipulates that she does not seek summary judgment on her claim for injunctive relief relating to Defendant's facilities nationwide.  (doc. 151, pg. 3 n. 1).  Thus, any ruling by the court on this motion shall apply only to Plaintiff's claim for overtime compensation for Defendant's employees at its Blountsville plant.

"physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  In *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944), the Court explained further that "work" does not necessarily require "exertion" under the FLSA.

The circuit courts have since held that an activity need not require exertion to be considered "work" under the FLSA.  In *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901 (9th Cir. 2004), the Ninth Circuit concluded that donning and doffing of safety equipment is compensable "work."  370 F.3d at 912.  The court explained that "the term 'work,' as used in the FLSA, includes even non-exertional acts," and "the donning and doffing of various types of safety gear [ ] constitute[s] 'work.'"  *Ballaris*, 370 F.3d at 910-11.

The Third Circuit explained its interpretation of "work" under the FLSA in *de Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3rd Cir. 2007).  The court there heard similar claims to those at issue here – whether Tyson must compensate its employees for time spent donning, doffing, and washing their protective outer clothing in a poultry processing plant.[15]   In determining whether these activities constituted

---

[15] Such "protective outer clothing" included "a smock, hairnet, beard net, ear plugs, and safety glasses." *de Asencio*, 500 F.3d at 364.

"work," the district court instructed the jury to consider whether the activities "involved physical or mental exertion." *Id.* at 363. The Third Circuit rejected this instruction, and held that the proper focus of "work" is not whether the activity requires exertion or is cumbersome, but whether it is "controlled or required by the employer and pursued for the benefit of the employer." *Id.* at 373. In so concluding, the court found that the donning and doffing at issue constituted "work as a matter of law."[16] *Id.*

Based on the foregoing, the question whether the donning, doffing, and washing activities are compensable "work" under the FLSA is answered by considering whether the activities are required or controlled by Defendant and whether they are performed primarily for Defendant's benefit, not whether the level of exertion required to perform them is sufficient to constitute "work."[17]

---

[16]

The court did not specifically explain its conclusion that these activities constituted "work." *See de Asencio*, 500 F.3d at 373. However, there seemed to be no dispute that Tyson required its employees to perform the activities. *Id.* at 363. The court did not discuss whether the activities were also pursued for Tyson's benefit or for its employees' benefit.

[17]

Despite *Armour*, *Ballaris*, and *de Asencio*, Defendant argues that "exertion" is a necessary element of "work." Defendant cites only to non-binding, non-persuasive authority in support of this argument, however. *See Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994); *Pressley v. Sanderson Farms, Inc.*, 2001 WL 850017 (S.D.Tex. 2001), *aff'd*, 33 Fed.Appx. 705 (5th Cir. 2002); and *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556 (E.D.Tex. 2001), *aff'd*, 44 Fed.Appx. 652 (5th Cir. 2002) (*per curiam*).

Defendant also argues that, to disregard the "exertion" element of "work" is to assume that the Supreme Court abrogated *Tennessee Coal* in deciding *Armour*. Contrary to this assertion, the court

Plaintiff argues that Defendant both requires its employees to don, doff, and wash protective outer clothing and primarily benefits therefrom.  Defendant disputes this argument, responding that it does not require its employees to wear <u>all</u> the protective items at issue, nor does it <u>primarily</u> benefit from these activities.

As explained *supra*,[18] a material factual dispute remains as to whether Defendant <u>primarily</u> benefits from these activities.  Therefore, summary judgment as to this claim is due to be **DENIED**.

> ### 2.     Whether the activities are compensable despite application of the Portal-to-Portal Act.

Plaintiff asserts that, even if the activities are preliminary or postliminary duties, they are nevertheless compensable as "integral and indispensable" to the principal work activities of Defendant's employees.  Again, however, a question of material fact remains as to whether the third element of the "integral and indispensable" analysis is satisfied.  For the same reason the court denies Defendant's Motion for Partial Summary Judgment as to this claim, Plaintiff's Motion for Partial Summary Judgment as to this claim is also due to be **DENIED**.

> ### 3.     Whether Defendant should be allowed to present a *de minimis*

---

may find that "exertion" is not a required element of "work" without concluding that *Tennessee Coal* has been abrogated; rather, it appears that *Armour* <u>explicates</u> *Tennessee Coal* by clarifying that exertion is not required for a duty to constitute "work."

  [18]  See part III(A)(2)(c) of this opinion.

defense.

Plaintiff next argues that Defendant should not be permitted to present a *de minimis* defense against her claims.  She points out that the *de minimis* standard is applicable only where "applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities."  29 C.F.R. § 785.47.  According to Plaintiff, Defendant must be precluded from offering this defense because the standard of § 785.47 is not satisfied on the facts of this case.

In *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), the Ninth Circuit considered three factors in determining whether an activity should be non-compensable as *de minimis*:  (1) the practical administrative difficulty of recording the uncompensated time; (2) the aggregate amount of uncompensated time; and (3) the regularity of the uncompensated work.  738 F.2d at 1063.

Defendant avers that it is administratively impractical to record the amount of time spent donning, doffing, and washing by its employees.  Defendant argues that its employees perform the duties at different times and locations in its plant, and at different paces and in different orders.  Defendant asserts that its employees often perform these tasks in between non-compensable acts, such as socializing.

According to Defendant, it cannot <u>practically</u> move its time clocks to each

location where these activities occur.  Defendant posits that the only possible solution is to <u>move</u> its preexisting time clocks to other locations in its plants.  The court rejects this argument, as Defendant may clearly <u>add</u> new time clocks to its plants.  Defendant controls where and how many clocks it places throughout its plants.

Moreover, Defendant already has in place a timekeeping system called "Perstime," which can track increments as small as one-one-hundredth of an hour.  Therefore, Defendant is clearly capable of tracking small amounts of time that might otherwise be *de minimis*.  However, the evidence before the court creates a genuine issue of material fact as to whether it is administratively practical for the Defendant to record this time.

Plaintiff also argues that the aggregate amount of uncompensated time precludes application of the *de minimis* defense.  She points out that her claim covers thousands of employees over a period of seven years.  According to Plaintiff, her claim is substantial, and "cannot be considered *de minimis* under any meaning of the word."[19]

---

[19]  Plaintiff supports this argument by asserting that her claims for walking and waiting time related to donning and doffing increases the amount of uncompensated time at issue in this case, and therefore renders her claims immune to a *de minimis* defense.

The evidence submitted by Plaintiff on this point is not clear.  Her expert, Dr. Robert Radwin, purported to analyze "walking and waiting time <u>when</u> it was an integral part of" the donning and doffing at issue.  (doc. 127, exh. A, pg. 3) (emphasis added).  This would seem to indicate that walking and waiting time was not included in each time measurement associated with each act of

32

_____

donning and doffing observed by Dr. Radwin.  Later, however, Dr. Radwin explains that
"[w]alking and waiting were an integral part of the donning and doffing activities."  (Id., pg. 13).
This would seem to indicate that walking and waiting time was included in each time
measurement.

Furthermore, Dr. Radwin explains that

> [e]mployees also had to walk from one location to another location in order to accomplish
> their donning and doffing activities.  For example, employees often had to walk from
> their workstations to equipment washing stations that were located near the plant exits.
> These also imposed delays and waiting for access.  Employees also had to walk to
> locations where equipment was stowed at the end of a shift.

(Id.) (emphasis added).

The report does not provide how often (i.e., daily, several times per day, or less than daily) this
walking occurred, or how often or how long employees waited for access to washing stations.

Next, Dr. Radwin indicates that walking times varied based on employees' locations in the plant,
given the nature of the physical design of the Blountsville plant.  Dr. Radwin offers no estimate
of the average length of time, daily or per activity, employees spent walking.  As explained infra,
Dr. Radwin's report does not indicate whether any of these times were included in his
measurements.

Dr. Radwin also explains that

> [t]he study was designed to under-estimate times so the estimated times are conservative
> and are actually greater than the times reported[.]  The total average time elapsed for
> donning and doffing activities did not include the time for employees who work in the
> Further Processing, Further Processing DSI, Packout and CVP Wogs departments to walk
> from the cafeteria to the plant at the start of a shift.  The data provided . . . estimates that
> the average time for this walk was .732 minutes.  The estimates reported for donning and
> doffing activities in these departments are therefore .732 minutes less than the time
> actually needed.

(Id.).

The court may discern from Dr. Radwin's report a specific estimate of time spent walking by
employees in certain departments at a certain time of the day.  However, based on tables
provided by Dr. Radwin in his report, the court counted an additional 20 departments at the
Blountsville plant for which time measurements of donning and doffing activities were included
in Dr. Radwin's study, but are not among the departments for which the .732 minutes of walking

In addition to Plaintiff's failure to offer <u>unambiguous</u> evidence in support of this argument, the court also rejects the argument as an incorrect application of the law.  Regardless of the number of employees for whom Plaintiff seeks back wages, or the length of time for which such pay is sought, the proper focus is on the aggregate amount of uncompensated time for <u>each</u> employee <u>per</u> <u>day</u>, not the <u>total</u> number of employees over <u>any</u> length of time.  Moreover, any damages will be

---

time applies.  (Id., pg. 9, Table 1).  No specific walking times are provided for employees who work in these other departments.

Based on the foregoing, the court cannot determine whether and to what extent walking and waiting times were included in Dr. Radwin's time measurements.

Plaintiff's other expert, Dr. Bruce Barrett, also purported to analyze the length of time spent donning and doffing by Defendant's employees at its Blountsville plant.  (doc. 109, exh. C).  Dr. Barrett estimated that total, daily donning and doffing time with two meal periods approximated 17.73 minutes to 20.38 minutes.  (Id., pg. 9).  With only one meal period, these times were adjusted to 13.30 minutes to 15.49 minutes.  (Id., pg. 8).  With no meal period, these times were adjusted to 8.73 minutes to 10.75 minutes.  (Id., pg. 9).  However, Dr. Barrett explains that "[Plaintiff] asked that I consider how the confidence intervals would be changed if [Dr. Radwin's estimate of about .75 minutes of] walking time [was] included in the measured times.  [ ]  I approximate that, averaged across all sample observations, this adjustment would increase the estimate of the true mean time by .3 minutes."  (Id., pg. 14).

Only if the court were to assume, which it does not, that Dr. Barrett would increase <u>each</u> of his time estimates by .3 minutes may the court <u>precisely</u> conclude that walking time has been included in his study.  The court also cannot determine whether and to what extent waiting time is included in Dr. Barrett's conclusions.

Given the ambiguity present in both of Plaintiff's expert reports, the court cannot definitively determine the <u>degree</u> to which walking and waiting time affects the donning and doffing times.  Therefore, the court rejects Plaintiff's argument that the lengths of time at issue "cannot be considered *de minimis* under any meaning of the word."  While Plaintiff offers evidence in support of her argument on this point, she has failed to meet her burden to offer <u>unambiguous</u> facts in support of her claims, supported by the evidence of record.  (See Standing Order Establishing Pretrial Procedure, Appx. II, pg. 23 of 28).

individual damages and will vary from employee to employee. Thus, it is not appropriate to aggregate the time spent by multiple employees, and it is equally inappropriate to aggregate that time over a period longer than a single workday. *See Nardone v. General Motors, Inc.*, 207 F.Supp. 336, 340 (D.N.J. 1962) (rejecting argument that claim of 53 individual plaintiffs (of whom only 12 testified) involving two-year period, in the aggregate, defeated *de minimis* defense as "misconstru[ing]" the *de minimis* doctrine, under which "the basic tasks still are in terms of minutes per day"). Furthermore, the Ninth Circuit explained in *Lindow* that

> [a]n important factor in determining whether a claim is *de minimis* is the amount of <u>daily time</u> spent on the additional work. There is no precise amount of time that may be denied compensation as *de minimis*. No rigid rule can be applied with mathematical certainty. *Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir.1949); *Nardone v. General Motors, Inc.*, 207 F.Supp. 336, 341 (D.N.J.1962). Rather, common sense must be applied to the facts of each case. Most courts have found <u>daily periods</u> of approximately 10 minutes *de minimis* even though otherwise compensable. *See, e.g., E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133, 135-36 (4th Cir.1955) (10 minutes); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir.1949) ("obvious" that 10 minutes is *de minimis*); *Carter v. Panama Canal Co.*, 314 F.Supp. 386, 392 (D.D.C.1970) (2 to 15 minutes), *aff'd*, 463 F.2d 1289 (D.C.Cir.), *cert. denied*, 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972); *see also Hodgson v. Katz & Besthoff, # 38, Inc.*, 365 F.Supp. 1193, 1197 n. 3 (W.D.La.1973) (summary of *de minimis* holdings). *But see Usery v. City Electric, Inc.*, 23 W.H. Cases 256, 257 (W.D.Tex.1976) (15 to 20 minutes not *de minimis*).

*Lindow*, 738 F.2d at 1062 (emphasis added).

Therefore, the court is persuaded that the number of employees or the length of time covered by the Complaint has no bearing on whether the *de minimis* defense may be raised.

While Plaintiff cites to authority for the opposite conclusion, *see Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998), Plaintiff overstates *Reich*'s holding. *Reich* involved overtime donning and doffing claims at a meat packing plant that employed, at any particular time between May 1989 and May 1993, between 1,537 and 1,717 employees daily in the slaughter and fabrication departments. 144 F.3d at 1332. The district court and the appellate court both considered what was clearly an average estimated aggregate daily time for these employees (11.57 minutes daily according to one expert opinion; between 8 and 11.5 minutes daily according to another). *Id.* "The district court determined that the preliminary and postliminary activities constituted ten minutes of compensable time, rejecting the defendant's argument that it should be excluded under the *de minimis* doctrine." *Id.* at 1333. The Tenth Circuit discussed the fact that "we have cited with approval cases finding that 'as little as ten minutes of working time [per day] goes beyond the level of *de minimis* and triggers the FLSA.'" *Id.* (citation omitted). The court then stated that "[w]e must evaluate three factors <u>in addition to the amount of time</u> to determine whether otherwise compensable time is *de minimis*: (1) the practical administrative difficulty

36

of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether 'the claimants performed the work on a regular basis." *Id.* at 1333-34 (emphasis added) (citations omitted). The court held "[a]lthough this is a close case we agree with the district court's conclusion that the work was not *de minimis* and hence was compensable." *Id.* Thus, contrary to Plaintiff's position, the size of the claim in *Reich* was one factor in determining that the *de minimis* standard was not met: it was not the sole or even stated to be the controlling factor.

This court's decision is consistent with *Reich*. It has considered "the size of the claim in the aggregate" because that is part of the "industrial realities" of this case. To allow the size of the claim in the aggregate to be the <u>determining</u> factor would arguably render <u>any</u> claim for <u>any</u> amount of time, no matter how insubstantial as to any particular employee on a <u>daily</u> basis, compensable just because many employees are involved or their claims cover an extended length of time. If the court were to apply Plaintiff's rule, even the "trifles" of a few seconds or minutes described by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* could avoid the *de minimis* rule. *See* 328 U.S. 680, 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515 (1946). Therefore, in rejecting Plaintiff's argument as to this element, it is possible that Defendant may demonstrate, at trial, that the amount of uncompensated time, per day, is *de minimis* under the industrial realities of this case.

37

Plaintiff next argues that, because the donning and doffing activities are performed each day, they occur with the requisite regularity to preclude application of the *de minimis* standard.

Defendant responds that, regardless of how often the activities occur, they are performed at irregular times <u>during</u> the day, and are thus <u>not</u> performed with sufficient regularity to preclude the *de minimis* defense.  Defendant cites to *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994); *Kassa v. Kerry, Inc.*, 487 F.Supp.2d 1063, 1067 n. 1 (D.Minn. 2007; and *Pressley v. Sanderson Farms, Inc.*, 2001 WL 850017 at * 3 (S.D.Tex. 2001), to support its argument that its employees do not perform the uncompensated activities with the requisite regularity to preclude the *de minimis* defense.  However, in each of these cases, the court either did not address the regularity of the uncompensated activities, or how regularly the activities must be performed, to preclude the *de minimis* defense.

Furthermore, the evidence is unrebutted that the activities are performed at the beginning and end of every work shift, so regularity has been established.  *See, e.g., Reich v. New York City Transit Authority*, 45 F.3d 646, 652 (2nd Cir. 1995) (activity was *de minimis* because, *inter alia*, it was not performed on a regular basis, "few and far between"); *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 719 (2nd Cir. 2001) (work not *de minimis* because, *inter alia*, it occurred every day;

distinguishing *Reich v. New York City Transit Authority* because work was regularly performed, was not difficult to record, and constituted a "significant amount of time").

However, as Plaintiff points out, 29 C.F.R. § 785.47 provides for application of the *de minimis* defense "only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities." Thus, the court's finding that regularity has been established does not answer whether the *de minimis* standard is satisfied in its entirety. Having considered the *de minimis* standard as a whole, the court finds that a genuine issue of material fact still remains as to the size of the aggregate claim and whether Defendant may practically record the amount of time spent on the uncompensated activities. Summary judgment as to this claim is due to be **DENIED**.

### 4.      Whether the second, unpaid rest break is "work."

As discussed *supra* with regard to Defendant's Motion for Partial Summary Judgment, 29 C.F.R. § 785.19(a) provides that "bona fide meal periods are not worktime." Because the second meal period qualifies as a "bona fide meal period," the time spent therein may not be considered "work." Therefore, Plaintiff's Motion for Partial Summary Judgment is due to be **DENIED** as to this claim.

### 5. Whether Defendant may present a good faith defense.

Plaintiff argues that Defendant may not present a good faith defense to her claims under the Portal-to-Portal Act, 29 U.S.C. § 259. Defendant has "dropped" this defense, and offers no argument in response to Plaintiff's position on this issue. Defendant's failure to refute Plaintiff's argument on this point is deemed a concession thereof, *see, cf., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned). Therefore, summary judgment as to this defense is due to be **GRANTED** as abandoned.

### 6. If Plaintiff prevails on the merits of her claims, whether Defendant should pay liquidated damages.

Plaintiff argues that, should she prevails on the merits of her claims, Defendant should not be permitted to avoid liability for liquidated damages based on any "good faith" defense it may offer under 29 U.S.C. § 260.[20]

The Portal-to-Portal Act provides that an employer who has violated the FLSA is liable for both the amount of overtime pay due to its employees and an equal,

---

[20] § 259 offers a defense against <u>liability</u>, while § 260 offers a defense against liquidated damages after liability has been found. As the district court noted in *Nelson v. Alabama Institute For Deaf and Blind*, 896 F.Supp. 1108, 1114 (N.D.Ala. 1995), the burden of presenting a § 259 defense is more difficult than that available under § 260. While Defendant has abandoned the defense available under § 259, it argues that it should be permitted to present the defense available under § 260.

additional amount in liquidated damages. 29 U.S.C. § 260. The employer may avoid liquidated damages only if it can prove "that the act or omission giving rise to [the FLSA violation] was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act." Id.[21]

The § 260 defense contains both "objective and subjective components." *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir.1991). Defendant must establish that it acted (1) in good faith, and (2) with a reasonable belief that its actions were not in violation of the FLSA. *Id.*; *see also Nelson*, 896 F.Supp. at 1115.

To satisfy the subjective "good faith" component, "the [employer has the burden of proving] that [it] had an honest intention to ascertain what [the Act] requires and to act in accordance with it." *Dybach*, 942 F.2d at 1566. To satisfy the objective "reasonable belief" component, Defendant need not demonstrate that it precisely conformed with the FLSA, but that it acted with a "reasonable belief of conformity." *Nelson*, 896 F.Supp. at 1115. Therefore, Defendant may present a § 260 defense even if it based its pay practices on a mistaken interpretation of Department of Labor regulations. *Id.*

---

[21] Plaintiff correctly points out that, if Defendant meets this burden, the court may exercise its discretion by awarding no liquidated damages or a limited amount thereof. 29 U.S.C. § 260; *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).

Offering no argument as to the subjective component of the defense, Plaintiff avers that Defendant could not have reasonably believed it acted in conformity with the FLSA.  Plaintiff argues that, for at least two years prior to this action, the Department of Labor more than adequately informed Defendant that the activities at issue are compensable.  However, given the vast amount of litigation similar to this action which has either recently been or is currently pending in district and circuit courts nationwide, and which offers varying conclusions under different legal theories, it is reasonable to conclude that the compensability of the activities presently at issue remains unsettled.  *Compare Anderson v. Cagle's*, 488 F.3d 945 (11th Cir. 2007) (poultry processor did not violate FLSA by failing to compensate its employees for pre- and post-shift donning and doffing activities pursuant to § 203(o) of the FLSA where collective bargaining agreement established a "custom or practice" of <u>not</u> compensating employees for these activities) *with Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (meat processor did not violate FLSA by failing to compensate its employees for pre- and post-shift donning and doffing activities; while such activities were "integral and indispensable" to employees' principal work activities, they were non-compensable as *de minimis*).  Furthermore, despite the Department of Labor's representations to Defendant during the years prior to this action, courts have afforded varying degrees

42

of deference to Wage and Hour Opinion Letters and regulations.  *See Anderson v. Cagle's*, 488 F.3d at 956; *Skidmore v. Swift & Co*., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124.[22]  While Plaintiff avers that the Department of Labor's position as to the compensability of these activities has remained static for at least 40 years, the expert report of Brian Farrington indicates otherwise.  (doc. 160, exh. 1).  Thus, Plaintiff has failed to demonstrate that Defendant had <u>no</u> reasonable belief that it acted in conformity with the FLSA by failing to compensate its employees for the activities at issue.  Therefore, Plaintiff's Motion for Partial Summary Judgment is due to be **DENIED** as to Defendant's § 260 defense.

### C.    Plaintiff's Motions to Strike.

Plaintiff moves to strike evidence in support of Defendant's argument that its employees bargained to receive two uncompensated meal periods.  (Pl's Opp. pg. 2 n. 3; Id. pg. 15).  Specifically, Plaintiff asks the court to strike paragraph 9 of the Declaration of Carolyn Box, Complex Human Resources Manager at Defendant's poultry processing facility in Carthage, Texas, which states that Defendant's

---

[22] Specifically, the Supreme Court explained in *Skidmore* that "the rulings, interpretations and opinions of the Administrator under [the FLSA], while <u>not controlling</u> upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts <u>and litigants</u> may properly resort <u>for guidance</u>. <u>The weight of such a judgment in a particular case will depend</u> upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it <u>power to persuade, if lacking power to control</u>." (Emphasis added).

employees at that plant negotiated a collective bargaining agreement with Defendant that provides for two unpaid 30-minute "meal periods."  (Def.'s exh. B, ¶¶ 1, 9).

The actual collective bargaining agreement is not attached to the declaration. Therefore, Plaintiff moves to strike this portion of the declaration pursuant to FED. R. EVID. 1002, which provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

The fact that two uncompensated meal periods were bargained for by employees at Defendant's plant in Texas has no bearing on the court's analysis of whether Defendant's employees are completely relieved from duty during their second meal break under § 785.19(a).  Therefore, as the evidence in question carries no relevance to the court's determination, the motion to strike is due to be **DENIED** as **MOOT**.  Additionally, Plaintiff moves to strike a portion of Defendant's brief in support of its Motion for Partial Summary Judgment.  In particular, Plaintiff asks the court to strike Defendant's statement that "[a]ny incursions into [its employees'] meal period resulting from donning and doffing take minimal time."  (Def's br. pg. 20).

Plaintiff moves to strike this sentence in a footnote to her opposition brief, but has failed to adequately explain her reason for so moving.  *See, c.f., Jean v. Nelson*, 711 F.2d 1455, 1501-02 (11th Cir. 1983) (rejecting case that consisted of "nothing

but mere protestation and arguments of counsel" as a proper rebuttal of prima facie case of discrimination).

The court has considered counsel's arguments merely as argument – not facts. Plaintiff has failed to support her motion with any basis or authority; therefore, the motion is due to be **DENIED.**

### D.     Defendant's Motions to Strike.

Defendant moves to strike the declarations of two witnesses proffered by Plaintiff in support of her Motion for Partial Summary Judgment.  Specifically, Defendant moves to strike the declaration of (1) Mary Ziegler, a former Farm Labor Team Leader of the Department of Labor's Wage and Hour Division, Employment Standards Administration, whose declaration regards a consent judgment entered between Perdue Farms, Inc., and the Department of Labor in May 2002 (doc. 186, exh. 4); and (2) Michael Murray, a Systems Analyst employed by BPX Technologies, Inc., and working under contract to provide litigation support services to the Department of Labor in the present action.  Mr. Murray's declaration describes his calculation of the number of times Defendant's employees punched a time clock during a single shift at Defendant's Blountsville plant between April 2000 and July 2006.  (Id., exh. 1).

### A.     Michael Murray

Defendant argues that the declaration of Mr. Murray constitutes expert testimony that Plaintiff failed to disclose prior to the deadline for disclosing expert witnesses in this action.  As such, Defendant argues that it has not been afforded an opportunity to depose Mr. Murray regarding his calculation methods or obtain rebuttal testimony in response thereto.  Therefore, Defendant avers, the court must strike Mr. Murray's testimony in accordance with FED. R. CIV. P. 37(c)(1).[23]

Plaintiff's sole basis for opposing Defendant's Motion to Strike is to argue that Mr. Murray's testimony does not constitute that of an expert, but rather qualifies as lay witness testimony, which Plaintiff was under no duty to disclose prior to the expert witness disclosure deadline.

Plaintiff intends to use Mr. Murray's testimony to prove the number of Defendant's employees who clocked out, in order to leave the facility, and then clocked back in during their meal periods.[24]  However, Mr. Murray points out that

---

[23]

FED. R. CIV. P. 37(c)(1) provides, in relevant part, that

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Plaintiff offers neither argument nor evidence that her failure to disclose Mr. Murray as an expert witness was either substantially justified or harmless.  Defendant argues, however, that such failure satisfies neither standard, and moves to strike on this ground.

[24]

In addition to his declaration, Mr. Murray's "report" has been submitted to the court.  (doc. 185, exh. 3).  The "report" consists of 15,141 pages of spreadsheet documentation enumerating the number

"[t]here is no way to directly count the number of breaks each shift."  (Murray Decl. ¶ 6).  Hence, in his declaration, Mr. Murray recounts the various means he used to "estimate as accurately as possible" the number of employees who left the facility during the relevant time period.  (Id., ¶¶ 8-12).

Defendant argues that the means by which Mr. Murray reached his conclusions render his declaration expert testimony rather than that of a lay witness.  Specifically, Defendant avers that Mr. Murray "did not simply count the number of punches," but rather "made various assumptions and exclusions of data to 'derive' and 'infer' the information on which he is opining."  Defendant argues that such means exceed the skills of a lay witness, and therefore, Plaintiff should have disclosed that she would utilize Mr. Murray as an expert witness.

Contrary to Defendant's argument, however, it appears that Mr. Murray's work does not exceed the understanding or skills of a lay witness.  For example, Mr. Murray assumed merely that two meal periods occurred where records indicated a meal period lasting longer than 30 minutes but less than or equal to 60 minutes.  (Id.,

---

of clock punches per employee per shift date from October 2000 until March 2006.  (doc. 185, exh. 3).  The final page of the "report" contains a table of calculations which purportedly reveal the total number of clock punches per shift during the relevant time period, including the percentage of employees who, based on Mr. Murray's calculations, actually punched out and back in during their meal periods.  (Id.).  Therefore, while Defendant apparently implies that the "report" is excessively long, the documentation is apparently merely a submission of the actual records upon which Mr. Murray's conclusions, which occupy less than one-half of a single page, are based.  (Id.).

¶ 6).  Given that Defendant has not disputed that employees' meal periods typically last only 30 minutes, such an assumption appears to be reasonable and not beyond the skill of a lay witness.  Mr. Murray also explained that he did not include in his calculations either computerized punches (as opposed to those entered manually on a time clock) or duplicated punches.  (Id., ¶ 8).  On occasions where a shift began during an evening and ended the following morning, Mr. Murray derived the actual shift date by matching dates between two tables found in Defendant's time records.  (Id., ¶ 9).  Finally, Mr. Murray explains in his declaration that he did not include in his calculations any shift dates during which an employee worked in more than one department within the plant.  (Id., ¶ 10).

Testimony is considered that of an expert if the opinion is based on "scientific, technical, or other underlined specialized knowledge."  FED. R. EVID. 702 (emphasis added).  However, Mr. Murray's techniques do not appear to be based on knowledge of scientific, technical, or otherwise specialized origin.  Furthermore, the cases cited by Defendant in support of its motion are either inapposite or distinguishable from this action.  In *Prieto v. Malgor*, 361 F.3d 1313, 1318-19 (11th Cir. 2004), the court considered whether proffered witness testimony constituted that of an expert or a fact witness, and concluded that the witness qualified as an expert who had been improperly excluded from Rule 26 disclosures.  However, contrary to that of Mr.

48

Murray, the proffered witness offered testimony based on his specialized knowledge of police force, and gave his opinion on the appropriateness of force used by a police officer in that case. *Id.* Such testimony more clearly constitutes an expert's opinion, rather than simple arithmetic within the understanding of a lay witness.

Similarly, in *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 2006 WL 1722341 (M.D.Fla. 2006), the district court concluded that proffered witness testimony was that of an expert rather than a fact witness. The witness testified to his opinion regarding the feasibility of a particular type of cable wiring installation on real estate property, and offered his conclusion as to the "only reasonable" option which was available to the plaintiff. *Id.* at * 2. The district court found the opinion was "replete with expert testimony" and struck the testimony for the plaintiff's failure to comply with disclosure requirements. *Id.*

As stated *supra*, Mr. Murray's declaration is not "replete with expert testimony," nor does it appear to be based on "specialized knowledge" of any kind. In *United States v. Hamaker*, 455 F.3d 1316 (11th Cir. 2006), the Eleventh Circuit held that, pursuant to FED. R. EVID. 701, a financial expert could testify as a lay witness where the witness prepared for his testimony simply by "add[ing] and subtract[ing] numbers from a long catalogue of [the defendant's] records and then

compared those numbers in a straightforward fashion."[25]  *Id.* at 1332.

While Mr. Murray's calculations include inferences, assumptions, and derivations that arguably exceed simple arithmetic, they do not appear to exceed the understanding of a lay witness or require the knowledge of an expert to reach the conclusions presented.  The plain language of Rule 701 allows a witness to testify in the form of inferences without requiring that the witness be designated as an expert. FED. R. EVID. 701.  In short, Mr. Murray's testimony does not appear to constitute that of an expert.[26]  Therefore, Defendant's Motion to Strike the testimony and report of Mr. Murray is due to be **DENIED**.

## B.    Mary Ziegler

---

[25]

FED. R. EVID. 701 provides that

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[26]

Other cases cited by Defendant, including *Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004); *Cooley v. Great Southern Wood Preserving*, 138 Fed.Appx. 149 (11th Cir. 2005); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006); *MMI Products, Inc. v. Long*, 231 F.R.D. 215 (D.Md. 2005); *Hubbard v. Edwards*, 2006 WL 2557904 (M.D.Ga. 2006); *Burney v. Rheem Mfg. Co., Inc.*, 196 F.R.D. 659 (M.D.Ala. 2000); *Hancock v. Hobbs*, 967 F.2d 462 (11th Cir. 1992); and *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366 (M.D.Ala. 2001), are clearly distinguishable from the present action, as <u>none</u> of these cases involves a determination of whether witness testimony constitutes that of a lay witness or an expert.  Therefore, Defendant does not properly base its argument that Mr. Murray's testimony should have been designated as that of an expert on the conclusions of the courts cited.

In response to any *de minimis* defense raised by Defendant, Plaintiff offers the declaration of Mary Ziegler, who purports to testify that the Department of Labor has entered a consent judgment with Defendant's competitor, Perdue Farms, whereby Perdue has agreed to comply with the Department's interpretation of the FLSA. (Ziegler Decl. ¶ 6).  Ms. Ziegler explains, in <u>general</u>, that Perdue has come into compliance with the consent judgment.  (Id., ¶¶ 7-8).  Ms. Ziegler implies that, because it is administratively feasible for Perdue to record the amount of time its employees spend donning, doffing, and washing their protective outer clothing, Defendant should likewise be capable of keeping such records.  (Id., ¶ 9).

Defendant moves to strike Ms. Ziegler's declaration on the grounds that the declaration is based on evidence as to Perdue's <u>specific</u> compliance methods – information which Plaintiff refused to supply during discovery as protected by, *inter alia*, the work product privilege.

Defendant argues that it may not rebut Ms. Ziegler's testimony without access to the evidence upon which the declaration is based.  Defendant avers that, without an understanding of <u>how</u> Perdue has modified its time-keeping operations to comply with the FLSA, Defendant cannot determine whether it may similarly adjust its record-keeping practices.  In short, Defendant argues that, by her assertion of the work-product privilege, Plaintiff has unfairly "stymied" its attempt to rebut her

argument that it is administratively feasible for Defendant to record the uncompensated activities because Perdue is capable of doing so.

In opposition to the motion, Plaintiff argues that (1) the evidence upon which Ms. Ziegler's declaration does rely has been produced to Defendant, and (2) Ms. Ziegler's declaration does not rely upon privileged evidence that Plaintiff has failed to produce.[27]

First, Plaintiff argues that evidence upon which Ms. Ziegler's declaration relies has been provided to Defendant in the form of the Department of Labor's amicus brief submitted to the First Circuit in *Tum v. Barber Foods*, 360 F.3d 274 (1st Cir. 2004), *aff'd in part, rev'd in part*, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005).  However, as Defendant points out, a legal brief is not evidence.

Plaintiff next avers that Defendant has a copy of the consent judgment with Perdue, in addition to a side agreement thereto, and a letter from Plaintiff confirming

---

[27] Plaintiff also points out that Defendant has twice deposed Ms. Ziegler, but failed to question Ms. Ziegler regarding her declaration both times.

Defendant does not reply to this argument.  However, Defendant points to four other occasions during which it questioned Department of Labor officials regarding Perdue's specific compliance with the consent judgment, none of which produced responsive answers.  (Perry Dep., pp. 417-418; Sullivan Dep., pg. 317; Hancock Dep., pg. 277; Fraser Dep., pp. 257-259).  In each deposition, the witness either claimed ignorance as to the details of Perdue's FLSA compliance, or was instructed not to answer questions on the subject.  (Id.).

Perdue's compliance with the FLSA.  However, neither the consent judgment nor the side agreement contains any reference to <u>how</u> Perdue is complying with the FLSA. While Plaintiff does not cite to any point in the record where her letter to Perdue may be found, she also fails to assert that the letter specifically enumerates how Perdue has achieved compliance.  Finally, Plaintiff argues that she produced more than 1,200 pages of documents regarding the Department's investigation of three Perdue plants, including the number of employees at each plant, plant layouts, and information about Perdue's failure to comply with the FLSA.  Again, however, such information does not purport to supply Defendant with any evidence as to how Perdue has achieved FLSA compliance.

As stated *supra*, Plaintiff argues that Ms. Ziegler's declaration does not rely on privileged documents.  Said argument is clearly erroneous, however, as the declaration is based almost exclusively on evidence which Plaintiff has refused to produce as privileged.  (See doc. 185, exhs. 5, 6).[28]

---

[28]

In its First Request for Production of Documents, Defendant sought "[d]ocuments reflecting or relating to any agreement, understanding, or other communication [Plaintiff has] had with Perdue Farms, Incorporated, or its agents regarding <u>the means or methods by which [Plaintiff] would consider it to have complied with its obligations</u> pursuant to paragraphs A.2 and A.3 of the Consent Judgment entered in *Chao v. Perdue Farms, Inc.*, No. 2-02-0033. . . ." (Emphasis added).  The only documents Plaintiff has agreed to produce reflect that a consent judgment was entered into between the Department of Labor and Perdue, but contain no information as to whether and how Perdue has specifically achieved FLSA compliance.

"[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 41-20 (D.Del.1992) (finding plaintiff could not rely on contents of documents protected by work-product privilege to establish any element of its claim against defendant), *citing* Moore's Federal Practice § 26.70(6)(c).[29]  Because Plaintiff relies on Ms. Ziegler's declaration to argue that Perdue is complying with the FLSA, but asserts the work-product privilege to prevent Defendant from effectively countering that argument, Defendant's Motion to Strike Ms. Ziegler's declaration is due to be **GRANTED**.

## IV.   CONCLUSION

Having considered the pending motions, written submissions, and evidence relevant thereto, the court finds as follows:

1.     As to Plaintiff's claim that a second meal period in its entirety[30] must be

---

[29]

§ 26.70(6)(c) of Moore's Federal Practice provides that

> A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue.  Similarly, if a party uses the substance of the documents in testimony, any work product protection is waived.

[30]

Defendant concedes that "any time employees spend 'working' during either meal period is

compensated pursuant to the FLSA, Defendant's Motion for Partial Summary Judgment is due to be and is hereby **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **DENIED**;

2.   As to Plaintiff's claim that pre- and post-shift donning, doffing, and washing activities are compensable because they are integral and indispensable to Defendant's employees' principal work activities, Defendant's Motion for Partial Summary Judgment is due to be and is hereby **DENIED** and Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **DENIED**, as to both required items and optional items;

3.   As to whether Defendant may present a *de minimis* defense to Plaintiff's claims, Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **DENIED**, based on the court's determination that a genuine issue of material fact remains as to (1) whether it is

---

compensable. For [the donning, doffing, and washing activities that occur during a meal period] to be compensable under the FLSA, however, [Defendant asserts the defense - rejected above - that the activities are not 'work' and also asserts the defense, which the court has found under these summary judgment facts is a jury question, that the activities must] be more than 'de minimis.'" Doc. 155 at p. 7.  Therefore, the court **DENIES** summary judgment to both Plaintiff and Defendant as to any claims based on donning, doffing, and washing activities that occur during a meal period.

administratively practical for Defendant to record the uncompensated activities, (2) the aggregate amount of time spent by each employee during each shift performing the activities, and (3) whether the activities are performed with the sufficient regularity;

4.    As to Plaintiff's claim that the activities are compensable as "work" under the FLSA, Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **DENIED,** based on the court's conclusion that a genuine issue of material fact remains regarding whether the uncompensated activities are performed primarily for Defendant's benefit;

5.    As to whether Defendant may present a good faith defense to liability under 29 U.S.C. § 259, Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **GRANTED** because Defendant has abandoned this defense;

6.    As to whether Defendant may present a good faith defense to avoid liquidated damages under 29 U.S.C. § 260, Plaintiff's Motion for Partial Summary Judgment is due to be and is hereby **DENIED**, based on the court's finding that a genuine issue of material fact remains regarding whether Defendant reasonably believed that its failure to compensate its

employees for the activities at issue was in compliance with the FLSA;

7.      Plaintiff's Motions to Strike are due to be and are hereby **DENIED**; and

8.      Defendant's Motion to Strike is due to be and is hereby **DENIED** as to

the report and testimony of Michael Murray and **GRANTED** as to the

declaration of Mary Ziegler.

**DONE** and **ORDERED** this the 22nd day of January, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge