IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HILDA L. SOLIS, ) | |
| Secretary of Labor, ) | |
| United States Department of Labor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:02-CV-01174-VEH |
| ) | |
| TYSON FOODS, INC., ) | OPPOSED |
| ) | |
| Defendant. ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW

Plaintiff, the Secretary of Labor, moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  Specifically, Plaintiff moves for a ruling that: (1) the donning of smocks and hairnets at the beginning of the workday, and the doffing of smocks and hairnets at the end of the workday, are principal activities; and (2) that back wages are due for all unpaid time at the beginning of the workday from the start of these donning activities until the start of paid time, and at the end of the workday from the end of paid time to the completion of these doffing activities.

I. <u>Legal Standard</u>

Where a reasonable jury would not have a "legally sufficient evidentiary basis to find for [a] party" on an issue that has been fully heard during trial, the court may resolve the issue against a party and grant judgment as a matter of law on that claim or defense. Fed. R. Civ. P. 50(a)(1). When determining whether to grant a Rule 50 motion, the court's "proper analysis is squarely and narrowly focused on the sufficiency of evidence." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). Rule 50 "allows the court to remove from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result." 9B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2521 (2009 Update).

Whether employees' time is compensable under the Fair Labor Standards Act is a question of law. *See Birdwell v. City of Gadsen*, 970 F.2d 802, 807-08 (11th Cir. 1992). Thus, the Secretary is entitled to judgment as a matter of law where, interpreting the facts in the light most favorable to Tyson, the Secretary has shown that the donning and doffing of smocks and hairnets are principal activities under the Portal-to-Portal Act that must be compensated. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1237 (11th Cir. 2001). The Secretary agrees with Tyson (*see* Memorandum in Support of Defendant's Motion for Partial Judgment as a Matter of Law at 5-6 (Doc. 391)) that this Court may rule as a matter of law on the

compensability of these activities without reaching subsidiary issues such as the amount of compensable time and resulting back wages owed. *See* Fed. R. Civ. P. 50 Advisory Committee Notes, 1993 Amendments ("judgments as a matter of law in jury trial may be entered . . . with respect to issues or defenses that may not be wholly dispositive of a claim or defense").

   II.  Statement of Facts

The testimony at trial is uncontradicted that Tyson requires all production workers to wear smocks and hairnets on the production floor. *See* Testimony of Louie Ayers, Blountsville plant manager, 1998-2000, Trial Transcript (Trans.), Vol. XX, Sept. 28, 2009, at 56, 99-100; Jadar Cagle, Blountsville plant manager, 2000-2005, Trans., Vol. IX, Sept. 8, 2009, at 7, 41-43, 52; James Casey, employed for 41 years at Blountsville, retired 2009 as general production manager, Trans. Vol. XIII, Sept. 15, 2009 at 6, 52-53, 55-58; and Tammy Cannon, quality assurance manager, 2000-2004, Trans. Vol. XXI, Sept. 29, 2009 at 10, 111. These requirements are mandated by Tyson corporate policy (Trans. Vol. XXI, Sept. 29, 2009 at 63-65, 81) as well as Blountsville plant policy. *Id.* at 81, 89-92. These requirements also reflect U.S. Department of Agriculture (USDA) regulatory requirements. *Id.* at 65, 82. Employees are instructed to wear smocks and hairnets (Trans Vol. VII, Sept. 2, 2009 at 90-91; Trans. Vol. IX, Sept. 8, 2009 at 41-43, 52)

and the failure to follow a supervisor's instructions can result in disciplinary action. *Id*.

Wearing a smock accomplishes two purposes. First, it prevents contamination of the product by assuring that contaminants on an employee's clothes do not make contact with the chicken. Trans. Vol. XIII, Sept. 15, 2009 at 52-53; Vol. IX, Sept. 8, 2008 at 38-40. In order to assure that the chicken is processed in a sanitary manner, employees must obtain the smock at the plant. Trans. Vol. IX, Sept. 8, 2009 at 38-40. Tyson prescribes where employees can put on and take off the smock and prohibits employees from taking it out of the facility. *Id.* As one employee stated, "if we came in from out on the street, we would have germs and bacteria on our clothes, so we would cover with a smock for hygiene purposes, cleanliness, [and] sanitation." Trans. Vol. VIII, Sept. 3, 2009 at 131.

The smock is also used to assure that employees are in their assigned areas. Trans. Vol. IX, Sept. 8, 2005 at 43-44. This is accomplished by assigning different color smocks to employees in different sections of the plant. This practice avoids the cross-contamination that could occur if employees venture into the wrong area. *Id.*

Simply put, hairnets are required to keep hair from falling into the chicken. Trans. Vol. XIII, Sept. 15, 2009 at 52-53.

The wearing of smocks and hairnets ensures Tyson's success.  Trans. Vol. VII, Sept. 2, 2009 at 145, 147-148.  It is important for Tyson to produce a safe product to sell in order to stay in business.  Trans. Vol. XX, Sept. 28, 2009 at 100.  Having these standards is a means to ensure Tyson can stay in business, sell its product and be successful.  Trans. Vol. XXI, Sept. 29, 2009 at 112.  Further, USDA inspectors would stop the production line if an employee is not wearing a smock or hairnet.  *Id*. at 80, 83.  As Louie Ayers testified "you have to comply to be able to run [the line].  If you're not running, you won't make money."  Trans. Vol. XX, Sept. 28, 2009 at 102-103.

### III. The Donning and Doffing of Smocks and Hairnets are Principal Activities

Donning and doffing activities required by law typically are integral and indispensable to an employee's principal activities and therefore compensable under the Fair Labor Standards Act, as amended by the Portal-to-Portal Act, 29 U.S.C. 201 *et seq*., 251 *et seq*.  *See* 29 C.F.R. 790.8 n.65.  Every court that has addressed the issue has found that legal requirements mandating the donning and doffing of gear and equipment support a determination that the required donning and doffing is compensable.

The Supreme Court first considered the integral and indispensable nature of donning and doffing activities in *Steiner v. Mitchell*, 350 U.S. 247 (1956).  The Court explained that the question before it was whether employees must be paid

5

when they are "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities *which state law requires their employer to provide . . .*" *Id.* at 248 (emphasis added). The Court answered that question in the affirmative, finding the donning and doffing of "old but clean work clothes" compensable. *Id.* at 251, 256. The Court also noted in *Steiner* that in passing Section 16(c) of the 1949 Amendments, which endorsed the Wage and Hour Administrator's regulations, Congress understood and approved the Administrator's interpretation of principal activity. *Id.* at 255; *see* 29 U.S.C. 208 note. The Court then cited to the regulation at 29 C.F.R. 790.8, which includes the provision that "where the changing of clothes on the employer's premises *is required by law*, by rules of the employer, or by the nature of the work" (29 CFR 780.8(c) n. 65 (emphasis added)) it is compensable. *Id.* Thus, at the outset, the Supreme Court recognized that legal requirements are an important factor in finding donning and doffing compensable.

The Eleventh Circuit has concluded that, in order to determine whether an activity is integral and indispensable, three factors must be considered. *Bonilla v. Baker Concrete Construction Inc.*, 487 F.3d 1340, *cert. denied*, 128 S.Ct. 813

(2007); *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398-400 (5th Cir. 1976).[1]

Those factors are: "(1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." *Id.* at 1344.  Each of these factors is met with regard to the donning and doffing of smocks and hairnets.

### A.  The Donning and Doffing of Smocks and Hairnets is Required

The testimony of every Tyson management official at the Blountsville plant has been consistent:  Tyson requires its employees to don and doff a smock and a hairnet at the Blountsville facility in order to work on the production floor.  *See* p. 3 *infra*.  As this Court has previously decided, "all production employees are required to wear a smock, hairnet, beard net (where applicable) and earplugs" and "[a]pplying *Dunlop's* three-part analysis, the first element is readily satisfied as to the required items at issue." *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1313 n. 11 (N.D. Ala. 2008).

Defendant argues that despite the fact that it requires this donning and doffing, it does not meet the *Bonilla* test for required activity, because the donning and doffing is also required by regulation.  However, a number of courts have expressly held that where federal regulations *or* the employer requires the

---

[1] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

7

performance of donning and doffing activities, the activities are integral and indispensable. The same ruling is implicit in the Supreme Court's decision in *IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005).

The Supreme Court noted in *Alvarez* that the magistrate in *Tum v. Barber Foods Inc.*, had found that the donning and doffing was "required by the defendant or by government regulation." 546 U.S. at 38. The court of appeals in *Tum* explained that "in the context of this case, employees are required by Barber Foods and or government regulation to wear the gear. Therefore, [donning and doffing] are integral to the principal activity and therefore compensable." *Tum v. Barber Foods Inc.*, 360 F.3d 274, 279 (1st Cir. 2004) *affd. in part and reversed in part*, 546 U.S. 21(2005).

Other courts are in accord. *See Burks v. Equity Group-Eufaula Division*, 571 F. Supp.2d 1235, 1246 (M.D. Ala. 2008) (cleaning and sanitizing found integral and indispensable where government regulations and company practices require it); *Perez v. Mountaire Farms Inc.,* 610 F. Supp. 2d 499, 517-518 (D. Md. 2009) (donning and doffing of earplugs, smocks, hairnets, bump caps and steel toed shoes integral and indispensable to chicken processing where required by USDA sanitary regulations, OSHA safety regulations and company policy).

### B. The Donning and Doffing of Smocks and Hairnets is Necessary

The Eleventh Circuit stated in *Bonilla* that, because the security screening at issue in that case was required by FAA regulations, it "was necessary for the employees to perform their work." 487 F.3d at 1344. As we explain below, that case is distinguishable on its facts from the instant matter. However, *Bonilla* is quite clear that where an activity is made necessary by a regulation, the test for whether the activity is "necessary" is met. Further, "[a]s to the second element, Defendant concedes that the donning, doffing, and washing of required items is 'technically necessary.'" *Chao v. Tyson Foods, Inc.,* 568 F. Supp. 2d at 1313. The donning and doffing of smocks and hairnets here is therefore necessary within the meaning of the Eleventh Circuit's integral and indispensable test.

### C. The Donning and Doffing of Smocks and Hairnets Primarily Benefits Tyson

The Eighth Circuit considered the compensability of time spent on legally required work activities in *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47, 50 (8th Cir. 1984) and held that safety inspections required by federal regulations were compensable despite the fact that the employees and the driving public also benefit from the rule. The court held that "[t]he fact that a pre-trip safety inspection is required by federal regulations does not remove the employer's control over and responsibility for this inspection. And, although the individual driver of the vehicle will, of course, benefit from the safety inspection and repair of

9

defects, appellant and the trucking industry as a whole, not to mention the motoring public, are certainly beneficiaries of the inspection procedure. We thus hold that the activity involved here meets the standard set forth by the Supreme Court for compensable activity under the FLSA." Accordingly, the mere fact that others also may benefit from a regulation does not affect the compensability of the required activity. Indeed, the courts have recognized that compliance with federal rules, in itself, provides a benefit to the employer.

In *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir.), *affd.*, 546 U.S. 21 (2005), the Ninth Circuit stated that donning and doffing of clothing and gear was for the benefit of the employer because those activities allowed IBP "to satisfy its requirements under the law, and [because] these activities prevent unnecessary workplace injury and contamination, both of which would inevitably impede IBP's 'disassembly' process." *Id*. (citations omitted). Thus, the Ninth Circuit's determination that donning and doffing sanitary and protective gear in a meat processing facility was integral and indispensable turned in part on the fact that these activities were required by federal regulations.

Although the Supreme Court in *Alvarez* did not expressly address the specific question whether donning and doffing gear required <u>by law</u> is compensable under the FLSA, it did quote from the language in *Steiner* noted above, that state law required the employer to provide shower facilities. *Alvarez*,

10

546 U.S. at 29.  In addition, as this Court has observed, the "Court implicitly relied on the Ninth Circuit's 'integral and indispensable' determination in concluding that any walking time that occurs after pre-shift donning and doffing is compensable." *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1312 (N.D. Ala. 2008); *see also Hoyt v. Ellsworth Cooperative Creamery*, 579 F. Supp. 1132, 1140 (W.D. Wis. 2008) ("[T]he Supreme Court has implicitly agreed with lower court determinations that employees donning and doffing clothing and equipment that they were required to wear by their employer and/or government regulation was integral and indispensable to their principal activities.").

    Here there was explicit testimony, not only that compliance with regulatory requirements was achieved through the donning and doffing of smocks and hairnets, but that these activities were performed for the purpose of allowing Tyson to produce a safe and sanitary product.  *See* pp. 4-5 *infra*.  Without such a product it is doubtful that Tyson would have any business at all.  As in *Alvarez*, the primary benefit to Tyson is clear and is more than enough to show that these donning and doffing activities are integral and indispensable to the employees' work.  *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 911 (9th Cir. 2004) (donning and doffing of uniforms "required to limit potential cleanroom contamination, and thereby [] assist employer in ensuring the quality of" silicon chips is for the benefit of the employer); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 809 (M.D. Tenn. 2008)

(donning and doffing of frocks "benefit[s] the defendants, in that they allow for the maintenance of sanitary conditions on the production floor and prevent the defendants' product from becoming contaminated.").

Defendant asserts that *Bonilla v. Baker Concrete Construction, Inc.,* supports the argument that activities that benefit consumers do not primarily benefit Tyson.  Defendant's Memorandum of Points and Authorities in Support of its Renewed Motion for Conference and Modifications Concerning the Summary of the Case to the Jury Venire in Voir Dire and to the Jury Before Opening Statements (Doc. 445) at 5-6.  Defendant distorts *Bonilla's* holding.  The court explained in *Bonilla* that the factors to consider when deciding whether an activity is integral and indispensable are: "(1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." 487 F. 3d at 1344.  The court noted that the security screening at issue in that case was required by government regulation, but held, based on the facts of that case, that the activity was not compensable because the screening did not benefit the employer.  487 F.3d at 1345.  The court did not hold, as Defendant has repeatedly suggested, that an activity that is required by federal regulation cannot be integral and indispensable.  Such a holding would strain credulity.  Nor did the court decide that activities benefiting a third party do not primarily benefit the employer.  The

Eleventh Circuit did not focus, as does Defendant, on the purpose of the regulations or their intended beneficiaries. The court focused instead on whether the activities were necessary to the work, required by the employer, and/or benefit the employer.

In any event, *Bonilla* presents an entirely different factual situation from the instant case. In *Sleimann v. DHL Express*, 2009 WL 1152187 (E.D. Pa. 2009), the court explained the difference between the cases involving security screening and those concerned with donning and doffing. The court stated there that unlike the donning and doffing in *Steiner v. Mitchell*, 350 U.S. 247 (1956), "there is no clear link between [the employees'] principal activities and their procession through security[.]" *Sleimann* at *4. The court went on to observe that unlike donning and doffing, every court addressing security screening has found participation in that activity noncompensable. *Id.*

As this Court has noted, "going through security screening had absolutely nothing to do with" the work to be performed in *Bonilla*, while in the instant case, there is an obvious nexus between the donning and doffing activity and the work to be performed. Trans. Vol. IV, August 28, 2009 at 40. In addition, "[i]n *Bonilla*, it was a different entity that was making them go through security. It was not the employer who made them go through security. Here, the employer instructed its employees to put on the earplugs." Trans. Vol. IV, August 28, 2009 at 41.

*Bonilla* held that the airport security screening of a construction crew prior to entering an airport to perform a construction job was not integral and indispensable to the construction work performed by the crew.  While the legal principles that the Eleventh Circuit set out in *Bonilla* apply here, the conclusion that the Eleventh Circuit reached is not determinative in this case, which presents a very different factual context addressing the donning and doffing of gear and equipment provided by Tyson at its own facility for sanitary purposes.

Of course, the test for whether these activities are work is whether they are required or controlled by the employer and primarily for the employer's benefit. *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944).  As we have shown above that these activities are required and that they are performed primarily for Tyson's benefit, they meet the definition of work under the FLSA.

### IV. The Continuous Workday Rule Does Not Allow a Reduction of Back Wages Based on Reasonable Time

Assuming, for purposes of this motion, that there are no prior principal activities, the donning of a smock or a hairnet, as principal activities, trigger the start of compensable time.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37, 40 (2005).  The Supreme Court explained in *Alvarez* that the continuous workday rule "means that the 'workday' is generally defined as the 'period between the commencement and completion on the same workday of an employee's principal activity or

activities.'" 546 U.S. at 29 (quoting 29 C.F.R. 790.6(b)).  The Supreme Court then proceeded to apply this rule broadly, holding that "during a continuous workday *any* walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal Act], and as a result is covered by the FLSA." *Id.* at 37 (emphasis added).  The Court went on to conclude that the First Circuit was incorrect in holding that pre-doffing waiting time was not compensable on the ground that it "qualified as a 'preliminary or postliminary activity'" and was thus excluded by the Portal Act. *Id.* at 39-40.  Rather, the Court stated that "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff [as opposed to time spent waiting to don in that case] is not affected by the Portal-to-Portal Act and is instead covered by the FLSA." *Id.* at 40.

As the district court in *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1357 (M.D. Ala. March 10, 2009) stated, in fully adopting the continuous workday standard as set out in *Alvarez*, "under *Alvarez*, the same rule that applies to walking applies to waiting: if it occurs between the first and last principal activities, it is compensable." *Id.* (citations omitted).

Tyson has argued, contrary to the plain language of the Supreme Court in *Alvarez*, that time that is not "reasonable" should be excluded from the continuous

15

workday.  The Ninth Circuit decision in *Alvarez* specifically rejected this argument.  There plaintiffs challenged the district court's finding, alleging that the district court had used "reasonable time" to determine back wages for donning and doffing activities.  339 F. 3d at 914.  The Ninth Circuit explained that it agreed with plaintiffs that generally "work" cannot be defined based on "an objective measure of reasonableness."  *Id*.  However, the court of appeals found that the district court had not excluded any work time based on a determination that "a specific plaintiff's 'work' was not itself 'reasonable'."  *Id*.  Instead, according to the Ninth Circuit, the district court adopted an "approximate" damage calculation for the entire class of workers pursuant to the rule laid down in *Anderson v. Mt Clemens*, 328 U.S. 680, 688 (1946).

  The court went on to recognize that back wages based on an "approximate" time might not be appropriate if the tasks were not uniform and were <u>not</u> "subject to dilatoriness."  339 F. 3d at 915.  In *Alvarez* however, where there was a "general pattern" which required employees to gather equipment, don the equipment in one of four locker rooms, and prepare their tools before going to the processing floor, and each "job classification ha[d] specific tool, supply, walk-time, and gear requirements", an approximate back wage award which was not based on the reasonableness of the time taken by particular workers to perform their duties was appropriate.  339 F.3d at 898.

16

In short, the court found that while an award of back wages may be approximate, in keeping with *Mt. Clemens*, it would be error to evaluate the time a worker spends during the continuous workday to determine whether it is reasonable. As explained above, all of the time during the continuous workday is compensable.

Accordingly, all of the time at the beginning of the day, starting with donning a smock or putting on a hairnet until the beginning of paid time, and all of the time at the end of the day from the end of paid time until the employee doffs his smock and hairnet, must be paid by Tyson as back wages.

## Conclusion

For the above stated reasons Plaintiff's Motion for Partial Judgment as a Matter of Law should be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
| ADDRESS: | CAROL A. DE DEO<br>Deputy Solicitor for National Operations |
| Office of the Solicitor<br>U. S. Department of Labor<br>61 Forsyth Street, S.W.<br>Room 7T10<br>Atlanta, GA  30303 | STANLEY E. KEEN<br>Regional Solicitor<br><br>ROBERT L. WALTER<br>Counsel |
| Telephone:<br>(404) 302-5450<br>(404) 302-5438 (FAX) | CHRISTOPHER D. HELMS<br>Attorney<br><br>JOANNA HULL |
| E-mail:<br>ATL.FEDCOURT@dol.gov<br>black.john@dol.gov | Attorney<br><br>NICKOLE C. WINNETT<br>Attorney |
|  | By:  /s/ John A. Black<br>         JOHN A. BLACK |
| SOL Case No. 01-10415 | Office of the Solicitor<br>U. S. Department of Labor<br>Attorneys for Plaintiff. |

18