FILED
2009 Oct-08 PM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) ) |
| TYSON FOODS, INC., | ) ) |
| Defendant. | ) ) |

Case No. 2:02-CV-01174-VEH

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S
PROPOSED ADDITIONAL JURY INSTRUCTIONS

Plaintiff, the Secretary of Labor ("Secretary"), respectfully submits this memorandum in support of her proposed additional jury instructions.

I. OFFSET

During trial, Defendant has presented evidence that it contends supports an "offset" of at least five minutes per day for time spent by employees on Tyson's premises during the "continuous workday." Specifically, Tyson argues that there is a period of at least five minutes between the start of paid time and the start of production, or "line time," (but occurring after the employees' first principal activity of the day) during which the employees could have, but did not, don all their sanitary and protective gear. Therefore, according to Tyson, these "extra"

minutes of paid time should be "offset" against, or should reduce, the damages for <u>uncompensated</u> time (between the employees' first and last principal activities) sought by the Department of Labor ("Department"). This argument must fail because by advancing it Tyson is attempting to circumvent the "continuous workday" principle, thereby making a jury instruction on the importance of the "continuous workday" essential.

    1. An employee must be paid for <u>all</u> uncompensated time during the continuous workday, i.e., between the employee's first and last principal activities of the day. At the same time that it recognized the limited effect of the Portal Act, the Supreme Court, in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), emphasized the significance of the "continuous workday rule" derived from that Act. The Court first stated that the rule "means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" 546 U.S. at 29 (quoting 29 C.F.R. 790.6(b)). The Supreme Court then proceeded to apply this rule broadly, holding that "during a continuous workday, <u>any</u> walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA." *Id*. at 37 (emphasis added). The Court did not

analyze the compensability of the walking time during the continuous workday in terms of whether it was reasonable.[1]

Similarly, the Supreme Court in *Alvarez* concluded that the First Circuit was incorrect in holding that pre-doffing waiting time was not compensable on the ground that it "qualified as a 'preliminary or postliminary activity'" and was thus excluded by the Portal Act. *Id*. at 39-40. Rather, the Court, again without applying a test of "reasonableness," stated that "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff [as opposed to time spent waiting to don in that case] is not affected by the Portal-to-Portal Act and is instead covered by the FLSA." *Id*. at 40. The Supreme Court thus presumably recognized that "reasonableness" is not a relevant measure by which to determine compensable time during the continuous workday; it instead concluded that the continuous workday itself was the appropriate benchmark for determining compensability. As the district court in *Anderson v. Perdue Farms, Inc.*, 2009 WL 653027 (M.D. Ala. March 10, 2009), in fully adopting the continuous workday standard as set out in *Alvarez, see id*. at *12-*13, recently stated, "under *Alvarez*, the same rule that applies to walking applies to waiting: if it

---

[1] *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 914 (9th Cir. 2003) (agreeing "that the definition of 'work' is not fixed, in most instances, to an objective measure of 'reasonableness.'").

3

occurs between the first and last principal activities, it is compensable." *Id.* at *13 (citations omitted).

2.  The Eleventh Circuit has followed the Supreme Court's articulation of the "continuous workday" principle, and has not applied any criterion of "reasonableness" to determine the compensability of time during the "continuous workday." *See Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1342 (11th Cir.), *cert. denied,* 128 S. Ct. 813 (2007); *see also De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 369-70 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 2902 (2008); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006).

3.  Both the Department's "hours worked" (29 C.F.R. Part 785) and Portal Act regulations (29 C.F.R. Part 790) support the centrality of the "continuous workday" principle. The regulation at 29 C.F.R. 785.7 states that compensable time "ordinarily includes <u>all the time</u> during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place." (internal quotation marks omitted; emphasis added). And the regulation at 29 C.F.R. 790.6(b) states that the "workday," as bounded under the Portal Act by an employee's first and last principal activities, "includes <u>all time</u> within that period whether or not the employee engages in work throughout all of that period." (emphasis added). Neither these nor the other "hours worked" and Portal Act

regulations impose any "reasonableness" test that must be met in order for time during the continuous workday to be deemed compensable under the FLSA.

    4.  Finally, it is instructive that the Third Circuit in *De Asencio* specifically rejected the argument "that so-called 'additional' or 'extra' minutes, which Tyson claimed it gave certain workers some of the time as non-'work' compensation, was a defense under the FLSA for the compensated time."  500 F. 3d 375.

    Thus, any notion of an "offset" for purposes of reducing the damages for <u>uncompensated</u> time occurring between the employees' first and last principal activities runs counter to the "continuous workday" principle and must be rejected. Because Tyson has presented evidence suggesting that the jury make such an offset, this Court should include the Secretary's proposed jury instruction on this issue emphasizing the primacy of the "continuous workday" in its final charge to the jury.

    5. Similarly, Defendant is not entitled to any offset for payments made for periods when work is not performed.  Defendant argues that it should receive an offset for any time it pays employees when they are not performing any work activities (for example, where an employee completes doffing their sanitary and protective gear before the end of their paid time).  Under the Department's regulations, such payments cannot be credited toward overtime compensation due under the FLSA.  *See* 29 C.F.R. 778.216.  A number of courts have also held that

such payments may not be used to reduce (or be offset against) damages for any <u>uncompensated</u> time under the FLSA.  *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 369-70, 375 (3d Cir. 2007) (specifically rejecting argument "that so-called 'additional' or 'extra' minutes, which Tyson claimed it gave certain workers some of the time as non-'work' compensation, was a defense under the FLSA for the compensated time"), *cert. denied*, 128 S. Ct. 2902 (2008); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903, 913-14 (9th Cir. 2004) (rejecting employer's argument that it could apply a paid lunch period as an "offset" for unpaid hours worked); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 952-53 (W.D. Wis. 2008) (rejecting defendant's argument that any calculation of uncompensated work time for plaintiffs should be offset by any time for which plaintiffs were compensated but were not working); *Agee v. Wayne Farms LLC*, 626 F. Supp. 2d 643, 647 (S.D. Miss. 2009) (rejecting employer's argument that it could receive credit for payments made for non-work time against compensation due to employees under the FLSA).  This Court should therefore include an instruction making clear that Defendant is not entitled to any offset for this time in its final charge to the jury.

## II. REGULATORY REQUIREMENTS DO NOT DEFEAT PRINCIPAL ACTIVITY FINDINGS

Tyson has presented evidence that, in addition to company requirements, federal regulations require at least some of the donning, doffing, and washing activities in this case.

1. The Eleventh Circuit has clearly stated that if a federal regulation requires that certain activities be performed, then it follows that it was "necessary" for the employees to perform their work. *See Bonilla*, 487 F.3d at 1344 (screening was "necessary" for the employees to perform their work, where such screening was required by the FAA). This is important because this then would satisfy one factor of the three-part test to determine whether preliminary or postliminary activities are "so 'integral and indispensable' as to be compensable" -- whether the activity is required by the employer, whether the activity is necessary for the employee to perform his or her duties, and whether the activity primarily benefits the employer. *Id.* (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-400 (5th Cir. 1976)).

2. Moreover, there is substantial caselaw supporting the proposition that a federal regulation requiring the performance of certain activities supports a finding that those activities are integral and indispensable to the principal activities of the employees. In *Alvarez*, the Supreme Court, in ruling for the compensability of pre-

doffing waiting time as part of the continuous workday, noted that the donning and doffing of clothing and equipment in *Tum v. Barber Foods, Inc.* was found by the magistrate to have been required by defendant or by government regulation. *See* 546 U.S. 21, 38 (2005); *see also Tum v. Barber Foods, Inc.*, 360 F.3d 274, 279 (1st Cir. 2004) ("In the context of this case, Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, [donning and doffing] are integral to the principal activity and therefore compensable."), affd. in part and reversed in part, 546 U.S. 21 (2005).

In *Steiner v. Mitchell*, 350 U.S. 247 (1956) (holding that the clothes-changing and showering were compensable under the Portal Act because they were "an integral and indispensable part of the principal activities for which covered workmen are employed"), the Supreme Court stated, significantly, that "[t]he precise question is whether workers in a battery plant must be paid as a part of their 'principal' activities for the time incident to changing clothes at the beginning of the shift and showering at the end, where they . . . are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities <u>which state law requires their employer to provide</u> . . . ." *Id.* at 248, 256 (emphasis added). The Supreme Court in *Steiner* also referred to 29 C.F.R. 790.8, which states that "where the changing of clothes on the employer's premises <u>is required by law</u>, by rules of the employer, or by the

nature of the work," it is compensable, 29 C.F.R. 790.8(c) n.65, as one of the Wage and Hour Administrator's regulations interpreting principal activity that Congress approved. *Id.* at 255 (emphasis added).

Other courts have similarly held that activities required by law are integral and indispensable. In *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47, 50 (8th Cir. 1984), the Eighth Circuit ruled that pre-trip safety inspections by drivers that were required by federal regulations were integral and indispensable to the drivers' principal activities and thus were compensable. Further, in *Burks v. Equity Group-Eufaula Division*, 571 F. Supp. 2d 1235, 1246 (M.D. Ala. 2008), the district court concluded that the activities of cleaning and sanitizing were integral and indispensable where government regulations and company practices require it. And in *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 517-18 (D. Md. 2009), the district court determined that the donning and doffing of earplugs, smocks, hairnets, bump caps, and steel toed shoes were integral and indispensable to chicken processing where they were required by USDA sanitary regulations, OSHA safety regulations, and company policy. *Cf. Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 911 (9th Cir. 2004) (donning and doffing of uniforms that were required by the employer was integral and indispensable); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 807-08 (M.D. Tenn. 2008) (donning and doffing of frocks required by the employer was integral and indispensable).

Because Tyson has presented evidence during its case-in-chief that federal regulations require at least some of the donning, doffing, and washing activities at issue in this case, a jury instruction making it clear that the existence of federal regulations requiring that certain activities be performed cannot be used as a defense to a finding of compensability based on the integral and indispensable nature of those activities is warranted. Thus, this Court should include the Secretary's proposed jury instruction on this issue in its final charge to the jury.

III. <u>DONNING AND DOFFING SMOCKS AND HAIRNETS ARE PRINCIPAL ACTIVITIES</u>

As explained in detail in the Secretary's Memorandum in Support of her Motion for Partial Judgment as a Matter of Law (Doc. 488), the employees' donning and doffing of smocks and hairnets in this case are principal activities. This Court deferred ruling on the Secretary's Motion for Partial Judgment as a Matter of Law. However, for the reasons stated in that Motion and accompanying Memorandum, a jury instruction that donning and doffing smocks and hairnets are principal activities is warranted.

IV. <u>MISSING WITNESSES</u>

If this Court does not accept the Secretary's proposed jury instruction regarding regulatory requirements, the Secretary maintains that, because Tyson has failed to produce witnesses in its corporate offices and elsewhere, who clearly are

within its control, to testify as to Tyson's corporate policy requiring donning and doffing and sanitizing activities at issue in this case, the jury should be instructed that it may make adverse inferences in regard to this sought-after testimony.

    1. Requesting such a jury instruction is appropriate in certain prescribed circumstances. In *Graves v. United States*, 150 U.S. 118, 121 (1893), the Supreme Court stated that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." And, the Eleventh Circuit has stated, in *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 (11th Cir. 1988), that an instruction on an adverse inference is appropriate where the requesting party "establish[es] the potential witness' unavailability in a physical or practical sense; and . . . [establishes that] the potential testimony must be relevant and noncumulative"; "availability also will turn on the witness' relationship to the nonproducing party. A witness is unavailable in a practical sense when this relationship is such that it creates bias or hostility against the opposing party."

    2. The "unavailability" prong of the test is easily met here -- Tyson successfully quashed the subpoenas of Russell T. Tooley, Timothy J. McCoy, and Oscar Mancia-Carpiu, and failed to agree to produce these current management-employee witnesses to testify at trial. These witnesses were deposed by the

Secretary well before Tyson had asserted its argument that the activities at issue here are not compensable because they are performed only because they are required by federal law and because they benefit the consumers. Thus, Plaintiff did not ask these deponents whether it was corporate policy to require the activities at issue. Because such questions were not posed by the Secretary and, as shown *supra*, the question whether these activities are required is important to the outcome of this case -- specifically in terms of whether the activities are compensable principal activities -- the testimony sought by the Secretary is relevant and noncumulative. Moreover, Tyson injected the issue of corporate policies into this case during the testimony of Tammy Cannon, when that witness claimed that a particular policy (Plaintiff's Exhibit 47), was a corporate policy that the Blountsville plant did not implement for approximately 15 months. Trans. Vol. 21, 63:6-7; 114:23-118:17; 120:6-121:1. Because Tyson failed to produce any corporate witnesses in this case, the Secretary has been completely deprived of the opportunity to explore this new contention.

      Therefore, in the event that this Court does not accept the Secretary's proposed jury instructions as to regulatory requirements not defeating a principal activity finding, it should accept the Secretary's proposed instruction concerning the adverse inferences that may be drawn by the jury as to "missing witnesses."

V. <u>WAITING TIME</u>

There is no gainsaying the conclusion that waiting time that occurs between the employee's first and last principal activities of the day is compensable as part of the employee's "continuous workday." Thus, as explained *supra*, in *Alvarez*, 546 U.S. 21, 39-40, the Supreme Court specifically concluded that pre-doffing waiting time, as opposed to time spent waiting to don, was compensable as part of the continuous workday. In *Perdue Farms, Inc.*, 2009 WL 653027, at \*12-\*13 (M.D. Ala. March 10, 2009), in fully adopting the continuous workday standard as set out in *Alvarez*, the district court stated that "under *Alvarez*, the same rule that applies to walking applies to waiting; if it occurs between the first and last principal activities, it is compensable") (citations omitted). And, the applicable regulation at 29 C.F.R. 790.6(b) states that the "workday," as bounded under the Portal Act by an employee's first and last principal activities, "includes <u>all time</u> within that period whether or not the employee engages in work throughout all of that period." (emphasis added).

Tyson has presented evidence that employees spend time in the cafeteria (or other plant break rooms) at the beginning of their shifts after they have arrived at the plant and, in most cases, after they have put on at least some of their required sanitary and protective gear. In light of this evidence, a jury instruction on this crucial and well-settled principle should be given.

Respectfully submitted,

ADDRESS:

Office of the Solicitor
U. S. Department of Labor
61 Forsyth Street, S.W.
Room 7T10
Atlanta, GA  30303

CAROL A. DE DEO
Deputy Solicitor for National Operations

STANLEY E. KEEN
Regional Solicitor

ROBERT L. WALTER
Counsel

CHRISTOPHER D. HELMS
Attorney

Telephone:
(404) 302-5450
(404) 302-5438 (FAX)
E-mail:
ATL.FEDCOURT@dol.gov
black.john@dol.gov

JOANNA HULL
Attorney

NICKOLE WINNETT
Attorney

By: /s/ John A. Black
    JOHN A. BLACK
    Attorney

Office of the Solicitor
U. S. Department of Labor
Attorneys for Plaintiff.

SOL Case No. 01-10415

14