**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **HILDA L. SOLIS,** )<br>**Secretary of Labor,** )<br>**United States Department of Labor,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**TYSON FOODS, INC.,** )<br>)<br>**Defendant.** ) | **Case No.:  2:02-CV-1174-VEH** |

**MEMORANDUM OPINION REGARDING
JURY INSTRUCTIONS RELATING TO "OFFSET"**

I.   Background

At the final charge conference, held on October 9, 2009, Defendant asserted that, under *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994), if the jury determines that the workers were paid before their first principal activity or after their last principal activity, or that they received a meal or rest break of 35 minutes, instead of only 30 minutes, that they could use for their own purposes, the jury should "offset" those "extra" compensated minutes, cumulated for the pay period in which they occurred, against any otherwise uncompensated time that the jury finds was work not excluded by the Portal Act for such pay period.  The Defendant did not, however,

offer a proposed instruction to that effect.[1,2]

The Secretary, anticipating such an issue, sought two instructions stating that such an "offset" is improper. Specifically, the Secretary sought the following two instructions.

Offset

In accordance with the "continuous workday" principle, compensable time begins with the first principal activity of the day. Thus, at the beginning of the day, damages should be computed from the first principal activity until the start of paid time. If you determine that employees were paid prior to the start of the production line, those payments should not reduce (or be offset against) the damages for any uncompensated time sought by the Department for the period between the first principal activity and the start of paid time.

Payments made for periods when work is not performed cannot be credited toward overtime compensation due under the FLSA. Thus, if you determine that employees were paid before the start of their first principal activity, or after the completion of their last principal activity, on a particular shift, those payments may not be used to reduce (or be offset against) the damages sought by the Department.

---

[1] Although Tyson Foods did offer four other jury instructions or modifications. *See*, doc. 491, filed October 9, 2009 at 9:51 a.m. (but handed to the court and the Secretary at the beginning of the charge conference).

[2] Tyson Foods has now offered such an instruction. *See* doc. 496 (filed October 12, 2009), p. 5. Specifically, Tyson Foods seeks an instruction that:

Defendant is entitled to offset any payments for non-compensable time occurring before the first principal activity against any compensable time in the same workweek for which it did not compensate. Defendant is also entitled to offset any time paid at meal periods for non-work activities against any compensable time in the same workweek for which it did not compensate.

II.     The Court's Order Inviting Additional Briefing

On October 11, 2009, the court invited additional briefing regarding this issue. See doc. 492. Both parties have now filed further briefing. See docs. 496 and 497.

In the court's order inviting additional briefing, the court stated:

> The Secretary is only seeking unpaid overtime ("premium rate" time) in this case. There is no claim for unpaid "regular rate" time.
>
> *Avery* dealt with police officers. The Secretary argued that this makes *Avery* not applicable to this case.

Doc. 492 at 1.

III.    Analysis

In her response, the Secretary does not discuss whether or not she has made any compensation claims other than for overtime. She simply ignores the court's statement. *See*, doc. 497. Tyson Foods, however, asserts that the Secretary "does in fact seek recovery of unpaid regular rate time in situations where employees were paid for less than 40 hours in a workweek and the allegedly uncompensated time results in more than 40 hours of compensable time in that week." Doc. 496 at 2. Tyson Foods cites the Secretary's demonstrative exhibits used with Michael Murray and the argument by the Secretary's counsel in response to Tyson Foods' objection to certain of those demonstrative exhibits. Doc. 496 at 2, referencing Tyson Foods' objections, doc. 492 at 1 and referencing Trial Tr. Vol. 16, 10:21 - 13:13. The court

finds that the Secretary's counsel's arguments referenced above show that the Secretary does seek additional compensation at the regular rate in such situations.

### A.   *Avery* Applies to the Hourly Workers At Issue

The Secretary points out that *Avery* dealt with police officers, whose meal periods are regulated by a different regulation than the meal regulation applicable to Tyson Foods' hourly production employees.  However, the court finds that this difference had no impact on the principal established by *Avery*.

### B.   **29 U.S.C. § 7(h) Is Not Applicable**

The Secretary next argues that, even if *Avery* would otherwise apply to claims of hourly workers other than police officers, *Avery* was decided before 29 U.S.C. § 7(h)(1) was added (effective May 18, 2000) to the Fair Labor Standards Act.  Thus, the *Avery* court could not and did not consider the import of 29 U.S.C. § 7(h)(1).

At the time *Avery* was decided, 29 U.S.C. § 7(h) provided in its entirety as follows:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. 207(h) (1999).

Due to the passage in 2000 of the Worker Economic Opportunity Act, P.L. No. 106-202, 114 Stat 308 (May 18, 2000), 29 U.S.C. § 7(h) now provides:

>(h) Extra compensation creditable toward overtime compensation.
>
>>(1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.
>
>>(2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. 207(h) (2009).

However, as Tyson Foods points out, the compensation at issue here was included in the employees' regular rate of pay. Therefore, Section 7(h) is simply inapplicable. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 827-828 (5th Cir. 2003) (Because the payments at issue were included in the employees' regular rate of pay, Section 207(h), and the cases interpreting it, were inapplicable.)

C.   **Offset Instructions Are Appropriate**

In this case, the start of paid time and the end of paid time are not in dispute. However, whether or not the employees performed non-preliminary work before the beginning of paid time or non-postliminary work after the end of paid time is in dispute and, if so, how much time was spent between the first principal activity and the start of paid time, or after the end of paid time and before the last principal activity occurred, is in dispute. Therefore these are issues that must be determined

by the jury. Additionally, the length of time that the employees actually had to use for their own purposes (were completely relieved from duty) at meal breaks is also a fact that the jury must determine. If the jury determines that employees' pay started before their first principal activity, then the jury should not award any damages to the employees for those pre- shift activities, because they were fully compensated or even over-compensated. Similarly, if the jury determines that employees had 35 minutes at meal breaks when they were completely relieved from duty and that the activities at issue in this case that occurred during meal breaks were therefore completely compensated, or indeed over-compensated, then the jury should not award any damages to the employees for those meal break activities. Finally, if the jury determines that all of the activities at issue were completed before the employees' paid time ended, then the jury should not award any damages to the employees for those post-shift activities, because they were fully compensated or even over-compensated.

However, unlike the employer in *Avery*[3], and unlike the employer in *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990),[4] Tyson Foods has failed to introduce <u>any</u> evidence as to the amount of over-compensation or even of the amount

---

[3] And the employers in the other cases cited by Tyson Foods in doc. 490 at p.5, fn5.

[4] Also cited by Tyson Foods in doc. 490 at p.5.

of over-compensated time. Tyson Foods has cited no authority for being allowed to claim an offset for time or payments in amounts as to which no testimony has been offered. The district court in *Kohlheim* recognized that the employer would have to establish, at trial, the amount of the offset it sought. *Id*. at 1481. ("On the issue of entitlement to credit for excess overtime compensation the district court concluded: 'if at trial the defendant can establish that the premiums it paid for holiday work, call back work, and consecutive shifts was equal to or greater than one and one half times the regular rate ... the defendant will be entitled to credit for such overtime premiums paid.'" (emphasis in original deleted) (emphasis by underlining added).

Moreover, it is firmly established law that, in a case brought under the Fair Labor Standards Act, if the jury finds that

> the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, [t]he solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer

7

> fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688, 66 S.Ct. 1187, 1192 (U.S. 1946) (emphasis supplied).

In the absence of any evidence to support Tyson Foods' offset theory, it would be error to give such an instruction and the court will not do so. *See*, *Merchants' Mut. Ins. Co. v. Baring Bros. & Co.*, 87 U.S. 159, 161-162, 1873 WL 15937, 3 (U.S.La. (U.S.OctoberTerm 1873) ("Competent evidence may be written or oral, direct or circumstantial, but when there is no legal evidence of any kind to support the theory of fact embodied in a prayer for instruction, whether presented by the plaintiff or the defendant, the instruction should always be refused; and such a ruling can never become a good cause for reversing the judgment. It is clearly error in a court, said Taney, C. J., to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered, as the instruction presupposes that there is some evidence before the jury which they may think sufficient to establish the fact hypothetically assumed in that way by the court, and if there is no evidence which they have a right to consider, then the charge does not aid them in coming to a correct conclusion, but its tendency is to embarrass and mislead them, as it may induce them to indulge in conjectures instead of weighing the testimony. When a prayer for instruction is presented to the court, and there is no evidence upon the subject in the

case for the consideration of the jury, it ought always to be withheld, and if it is given under such circumstances, it will, as a general rule, be regarded as error in the court, for the reason that its tendency may be, and often is, to mislead the jury by withdrawing their attention from the legitimate points of inquiry involved in the issue.") (footnote omitted).

Therefore, the court will give the following instructions requested by the Secretary (as modified by the court) regarding "offset" and will not give the instruction requested by Tyson Foods. Moreover, Tyson Foods will not be allowed to argue that it is entitled to an offset, although it will be allowed to argue that the inference that the Secretary seeks the jury to make is unreasonable, because no evidence has been introduced to support Tyson Foods' offset theory. (These offset instructions will be included in or after the damages section of the instructions.)

> In accordance with the "continuous workday" principle, compensable time begins with the first principal activity of the day and ends with the last principal activity of the day, except for bona fide meal periods or rest breaks when the employees are completely relieved from duty. Thus, at the beginning of the day, damages should be computed from the first principal activity until the start of paid time. At meal periods, damages should be computed for all periods that the employees worked but were not paid. At the end of the day, damages should be computed from the end of paid time until the last principal activity of the day. It is paid time and not production time that you must consider in computing damages.

**DONE** this the 12th day of October, 2009.

                                               *(signature)*
                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge